# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1285

———————

Eng Yang,                            \*

                                \*

            Petitioner,            \*

                                \*    Appeal for Review of an

     v.                         \*    Order of the Board of

                                \*    Immigration Appeals.

Alberto Gonzales,           \*

                                \*

            Respondent.         \*

———————

Submitted:  February 18, 2005
Filed:  July 6, 2005

———————

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.

Eng Yang, a citizen of Laos and member of the Hmong ethnic group, entered the United States in December 1992 as a non-immigrant visitor and filed a request for asylum in April 1993. The former Immigration and Naturalization Service initiated removal proceedings in 1999. After an evidentiary hearing, the Immigration Judge (IJ) denied Yang asylum, withholding of removal, and relief under the Convention Against Torture, ordered Yang removed, and granted him voluntary departure. The Board of Immigration Appeals affirmed without an opinion. Yang then petitioned this court for judicial review of the adverse agency decision. We deny the petition.

Yang was eight years old when his father was killed in 1968 while serving on the side of U.S. forces during the Vietnam war. After the Communists came to power in 1975, Yang completed high school and was selected by the government for further education in East Germany. When he returned to Laos in 1982, the government gave him a low-paying job in road construction, and he was later promoted to supervisor. Yang learned that his mother and two of his siblings were living in the United States. In May 1989, he left Laos to visit these family members under a Laotian passport, exit visa, and three-month leave of absence from work. He returned four months later to learn he had lost his job. Yang testified that government agents then detained him for one month, questioning him constantly about his family's military history and U.S. connections, until family members paid a bribe and he was released. Yang, his wife, and six children then moved to a nearby village and took up farming, but government agents continued to monitor and question Yang. He obtained a Laotian passport in 1992 and came to the United States. The Laos embassy in Washington extended the passport in 1995 and 1998. Yang's wife and children have remained in Laos without incident. Family members living in the United States did not testify or submit affidavits supporting his claim of persecution, but Yang testified that his wife called him from Laos shortly after he came to the United States to warn that he would be harmed if he returned.

The IJ found that Yang failed to establish either past persecution or the well-founded fear of future persecution that an alien must prove to be eligible for asylum. See 8 U.S.C. §§ 1101(a)(42)(A) & 1158; Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002). The IJ expressed concerns "about [Yang's] story because of the discrepancies between his testimony and his application." The IJ described Yang's testimony about his alleged one-month imprisonment as "general and meager" and noted that the Communist government has twice allowed him to visit the United States and twice renewed his passport since 1992. The IJ emphasized Department of State reports that 50,000 to 60,000 Hmongs have been repatriated since 1988 and thousands of Laotians living abroad have visited the country without restriction. The

IJ likewise found that Yang failed to meet the higher burden of proof required for withholding of removal and did not qualify for relief under the Convention Against Torture because he failed to show that it is more likely than not that he will be tortured by the government if he returns to Laos.

Yang first argues that the IJ's adverse credibility finding is not supported by substantial evidence because any inconsistencies in his testimony were insubstantial and the product of confusion. This argument proceeds from a faulty premise. The IJ did not make an adverse credibility finding. Rather, the IJ expressed concern about discrepancies in Yang's "story." There were discrepancies in Yang's application, hearing testimony, and an immigration officer's notes from Yang's asylum interview. The discrepancies were perhaps relatively minor, but they provided added support for the IJ's critical findings that Yang's general and meager testimony failed to show past persecution or a well-founded fear of future persecution. We will now review those findings with the assumption that Yang need not overcome an adverse credibility finding, which is usually fatal to an asylum applicant's petition for judicial review.

Yang argues that the IJ erred in finding that he failed to prove past persecution and a well-founded fear of future persecution. We disagree. "Persecution is the infliction or threat of death, torture, or injury to one's person or freedom" on account of a protected factor such as religion or membership in an ethnic group. Regalado-Garcia, 305 F.3d at 787. Yang's vague claim that he was detained and interrogated for one month upon returning to Laos in 1989 does not describe conduct severe enough to establish past persecution. Cf. Eusebio v. Ashcroft, 361 F.3d 1088, 1090-91 (8th Cir. 2004). The evidence that Yang was educated and employed by the Laos government and obtained passports and visas to visit the United States, combined with Department of State reports that thousands of Hmong have been repatriated and that members of the group are not persecuted today for their ethnicity alone, strongly support the IJ's persecution findings. See, e.g., Alemu v. Gonzales, 403 F.3d 572, 575 (8th Cir. 2005). On this record, we cannot conclude "that the evidence [Yang]

presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Finally, Yang argues that the BIA misapplied its own regulations in affirming the IJ without opinion. We have repeatedly held that we do not review this internal agency procedure. See, e.g., Aden v. Ashcroft, 396 F.3d 966, 967 n.1 (8th Cir. 2005).

While we sympathize with Eng Yang's desire to obtain the freedom, economic opportunity, and personal security that are available in this country and lacking in Laos today, we must conclude that substantial evidence on the administrative record as a whole supports the IJ's decision to deny him asylum, withholding of removal, and relief under the Convention Against Torture. The petition for review is denied.

_____