# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-4002

———————

Abdulai Jalloh,                          *
                                         *
                  Petitioner,            *
                                         *   Petition for Review of an
        v.                               *   Order of the Board of
                                         *   Immigration Appeals.
Alberto Gonzales,                        *
                                         *
                  Respondent.            *

———————

Submitted:  February 18, 2005
     Filed:  August 17, 2005

———————

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

———————

LOKEN, Chief Judge.


      The Immigration and Naturalization Service commenced removal proceedings against Abdulai Jalloh, a native and citizen of Sierra Leone. Conceding removability Jalloh applied for asylum and withholding of removal. The Immigration Judge (IJ) denied the application after a hearing, ordered Jalloh removed to Sierra Leone, and granted him voluntary departure. The Board of Immigration Appeals (BIA) affirmed in a written opinion. Jalloh petitions for judicial review of the BIA's final order of removal. See 8 U.S.C. § 1252(b). We deny the petition.

At the hearing and in supporting affidavits, Jalloh testified that he was a student at a university in Freetown, Sierra Leone, living with the wealthy family of his politically prominent deceased uncle, Mohamed Barrie, when rebel forces of the AFRC and RUF overthrew the government of Ahmed Kabbah in May 1997. Jalloh is a member of the Muslim Fullah tribe. In 1996 elections, his family had supported Kabbah, a Muslim member of the Mandingo tribe. The AFRC and RUF rebels were anti-Muslim and jealous of wealthy businessmen such as Barrie.

Three weeks later, a family friend named "Papa Shaw" telephoned Jalloh in Freetown. Papa Shaw said he had witnessed rebel soldiers invade the family's village in northern Sierra Leone, call Jalloh's parents and sister out of their house by name from a list, and kill them. Jalloh testified that the list was of supporters of the Kabbah government and that his parents and sister were on the list because his father had openly supported Kabbah in the recent elections. Papa Shaw did not say that Jalloh's name was on the list. At the time, Jalloh had been living in Freetown for five years and had not been politically active. He testified that he has no interest in politics.

After the phone call, Jalloh traveled by hired car with a Muslim Imam to his parents' village to bury his parents and sister. Traveling back to Freetown two days later, his hired car was stopped by rebel soldiers, who asked Jalloh if he was a Fullah from Sierra Leone. Jalloh said he was a Fullah from neighboring Guinea. The rebels forcibly conscripted Jalloh and four other men in the car to fight against the government. Jalloh was taken to a rebel training camp, where he was photographed and fingerprinted. After a week, he escaped to a refugee camp in Guinea. When he learned that rebels were executing Sierra Leone Fullahs in Guinea, he obtained a fraudulent British passport and made his way to the United States.

Peacekeeping forces from other West African nations intervened in the violent Sierra Leone civil war and restored Kabbah as president in mid-1998. The civil war raged on. At the time of Jalloh's asylum hearing in February 1999, the rebels still

controlled much of the country and had invaded Freetown. But the war ended in 2002, before the BIA's February 2003 decision. According to the 2002 Department of State Country Report, though widespread problems remain, the rebel forces and civil defense militia loyal to Kabbah have demobilized, Kabbah was reelected in peaceful May 2002 elections, and the rebels "did not exert significant control over the civilian population in any area of the country."

To be eligible for asylum, Jalloh must demonstrate that he is unable or unwilling to return to Sierra Leone "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "To show a well-founded fear of persecution, an alien must show that the fear is both subjectively genuine and objectively reasonable. Proof of past persecution creates a rebuttable presumption that the alien has a well-founded fear of future persecution." El-Sheikh v. Ashcroft, 388 F.3d 643, 646 (8th Cir. 2004). We review the BIA's decision under the deferential substantial evidence standard. We must uphold the agency's determination that Jalloh is not eligible for asylum unless the evidence "was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 484 (1992).

At the hearing, Jalloh claimed that he has a well-founded fear of persecution by the Sierra Leone government and by the remaining rebel forces should he return to Sierra Leone. He fears persecution by the rebels, who can identify him from his photograph and fingerprints, because he deserted their training camp, because he is a Muslim Fullah, and because of his relation to Barrie, a wealthy government supporter. He fears persecution by the government or its local militias because they may have accessed rebel records that include Jalloh's photograph and fingerprints, in which case they will treat him as a former rebel combatant. He does not share Barrie's family name, and his father's local support of the Kabbah government was not sufficiently well-known to assuage government suspicion of Jalloh's loyalty.

-3-

The BIA concluded that Jalloh had "not met his burden of proof to show past persecution or a well-founded fear of future persecution." Jalloh's fear of the rebels is not well-founded, the BIA reasoned, because he traveled openly to his family's funeral while the rebels were in power; in his one encounter with the rebels their only interest was to conscript him; the Kabbah government has returned to power; and the 2002 Country Report noted no recent reports of the RUF killing ex-combatants. Jalloh's fear of the Kabbah government is not well-founded, the BIA explained, because there is no evidence the government is retaliating against those who were forcibly conscripted by the rebels; the local militias have demobilized; and the 2002 Country Report noted the end of civil war and improving country conditions.

On appeal, Jalloh argues that his testimony describing the politically-motivated murder of his family was proof of atrocious past persecution that established a well-founded fear of future persecution should he return to Sierra Leone. The government responds that Jalloh waived the issue of past persecution by not raising it to the BIA. We reject this contention because Jalloh's Notice of Appeal was broad enough to encompass this issue, and the BIA's opinion addressed it. However, in arguing his appeal to this court, Jalloh has significantly changed the asylum claim he presented to the agency. The IJ's opinion noted that Jalloh's claim was not based "on the death of his parents but rather his recruitment by the [rebels] when returning to Freetown after the burial." The administrative record supports this observation.

Without question, acts of violence against family members on account of religion or political opinion "may demonstrate persecution if they show a pattern of persecution tied to the petitioner." Ahmadshah v. Ashcroft, 396 F.3d 917, 920 (8th Cir. 2005). However, evidence of isolated violence is not sufficient. There must be evidence of a pattern of persecution on account of a protected ground, and the persecution must be tied to the petitioner. See Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996). Here, three members of Jalloh's family were killed in an isolated incident far from where he was living. Papa Shaw's report that the family members

-4-

were on a rebel list of government supporters, though uncorroborated, is evidence that the killings were politically motivated, not random civil war violence. But no evidence linked the possible political or ethnic persecution to Jalloh. He was living far away and not politically active. He was not on the rebel list. He traveled openly to bury his family members. And when he was captured by rebels on his way home to Freetown, they apparently did not know his family affiliation and simply attempted to conscript him into their military force, which is not a form of persecution for purposes of our asylum laws. See Elias-Zacarias, 502 U.S. at 481-83. In these circumstances, we conclude that substantial evidence on the administrative record as a whole supports the BIA's determination that Jalloh did not suffer past persecution.

Because he failed to prove past persecution, Jalloh cannot succeed in overturning the BIA's determination that he lacks a well-founded fear of future persecution. Jalloh acknowledges the significantly changed country conditions in Sierra Leone but argues that his "somewhat dated" testimony nonetheless established "that there is still a significant possibility of harm should he return." But whether there is a possibility of harm is not our standard of review. We must uphold the BIA's ultimate asylum finding because the administrative record supports the reasons given by the BIA for rejecting Jalloh's claim of a well-founded fear of future persecution, either by the demobilized rebels or by the Kabbah government that his family has politically supported. In addition, as Jalloh relies on the same evidence for his claim under the Convention Against Torture, the record likewise supports the BIA's ruling that Jalloh failed to prove he is eligible for relief under the CAT. See Aden v. Ashcroft, 396 F.3d 966, 969 (8th Cir. 2005).

Substantial evidence supports the BIA's decision that Jalloh is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture. Accordingly, we deny his petition for review.

_____