# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3038

_____

Nathaniel T. Vonhm, Jr.,                  *
                                          *
            Petitioner,                   *
                                          *   Petition for Review of an
     v.                                   *   Order of the Board of
                                          *   Immigration Appeals.
Alberto Gonzales, Attorney General        *
of the United States of America,          *
                                          *
            Respondent.                   *

_____

Submitted:  April 20, 2006
Filed: July 20, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

_____

LOKEN, Chief Judge.

Nathaniel Vonhm, a citizen of Liberia, entered the United States in March 2000 and filed an application for asylum. After an evidentiary hearing, the Immigration Judge (IJ) denied Vonhm asylum, withholding of removal, and relief under the Convention Against Torture. The IJ ordered Vonhm's removal but granted him voluntary departure. The Board of Immigration Appeals (BIA) affirmed in a written opinion. Vonhm petitions this court for judicial review, arguing that substantial evidence on the administrative record as a whole fails to support the BIA's decision and that the IJ denied Vonhm a fair hearing. We deny the petition.

# I. Did the BIA Err in Denying Relief?

The record establishes that the Liberian nation and people were wracked by a series of bloody civil wars between 1980, when Samuel Doe seized power in a coup, and 2003, when Charles Taylor resigned as President and fled to Nigeria. Doe was a member of the Krahn tribe, as is Vonhm. Charles Taylor's forces began an armed insurrection against the corrupt Doe regime in 1989. The Department of State observed that the rebellion "quickly escalated . . . and took on an alarmingly tribal nature." Doe was captured and killed in September 1990. African peacekeeping forces intervened but failed to halt the violence. A series of interim governments presided over the continuing conflict until a cease-fire reduced hostilities, which led to Taylor's election as President in July 1997. Armed factions remained opposed to Taylor, and civil war resumed in 2000. Rebel shelling of civilians in the Liberian capital finally prompted West African peacekeepers to intervene and enforce a cease-fire. In August 2003, Taylor resigned and fled the country. The United Nations deployed a large peacekeeping force in early 2004 to protect a transitional government and to promote disarmament and an election.

In 1992, in the midst of civil war, Vonhm at age 26 began working for the central government as an assistant cashier for the Ministry of Post and Telecommunications. He was promoted to chief cashier in 1994 and became the Ministry's Financial Comptroller in August 1996 after graduating from the University of Liberia with degrees in accounting and public administration. He was promoted to Principal Director in June 1998 and held that position until he fled Liberia in March 2000. As Director, Vonhm's responsibilities included issuing radio frequency licenses and maintaining the registry of Liberian ships. The latter function took him to London on at least two occasions, and his passport reflects numerous business trips to the Ivory Coast during this period. Vonhm did not apply for asylum in either of those countries. Vonhm's father, mother, younger sister, and five of his children continue to live in Liberia.

Vonhm claims past persecution and a well-founded fear of future persecution by armed forces loyal to Charles Taylor on account of Vonhm's membership in both the Krahn tribe and the political party or faction that supported the Doe regime. His asylum application recited that Taylor's rebel forces killed Vonhm's cousin, brother, and uncle in 1990 and raped and murdered his sister in 1992. But he did not cite these events as a basis for his fear of returning to Liberia in his asylum interview, his April 2004 supporting affidavit, or his testimony at the evidentiary hearing. Rather, his focus was on incidents that occurred after Charles Taylor came to power in 1996.

First, Vonhm stated, one of his superiors at the Ministry demanded that Vonhm as Comptroller pay her money secretly. Vonhm refused, and the superior was fired. Unfortunately for Vonhm, she was the mother-in-law of General Benjamin Yeaten, head of Taylor's personal security detail, who then looted Vonhm's house and raped his wife in retaliation. Second, after Vonhm was promoted to Principal Director, he refused to revoke the radio frequency issued to an independent radio station and was accused of allowing rebels to use that frequency. After two weeks in prison, Vonhm was released when the Catholic Justice and Peace Commission intervened. Third, in September or October 1999, Director Vonhm was again accused of collaborating with a rebel group and was imprisoned for up to four months (his supporting affidavit described a shorter period). Upon release, friends warned him not to return home, and Taylor's security forces went to his house looking for him and beat his uncle, who died from the injuries. Fearing Taylor's forces would kill him, Vonhm obtained a visa to enter the United States on business and applied for asylum after arriving in March 2000.

The Attorney General has discretion to grant asylum to a "refugee," 8 U.S.C. § 1158(b)(1), defined as an alien who is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If an asylum applicant establishes past

persecution, he is presumed to have a well-founded fear of future persecution. The burden then shifts to the government to show by a preponderance of the evidence "that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well founded fear of being persecuted if he or she were to return." Hasalla v. Ashcroft, 367 F.3d 799, 803 (8th Cir. 2004), citing 8 C.F.R. § 1208.13(b)(1)(i). We review the BIA's denial of asylum under the substantial evidence standard and uphold the agency unless the evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Vonhm argues that the murder of family members by Taylor-led rebels in 1990 and 1992; the retaliation against Vonhm by his former superior's son-in-law, a leader of Taylor's security forces; and Vonhm's arbitrary detention on two occasions for allegedly supporting rebel groups after Taylor came to power were sufficient proof of past persecution on account of his membership in the Krahn tribe and his political opposition to Taylor's forces. We disagree. Acts of violence against family members on account of a protected basis "may demonstrate persecution if they show a pattern of persecution tied to the petitioner." Jalloh v. Gonzales, 418 F.3d 920, 923 (8th Cir. 2005); see Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996). Here, the violence was committed many years ago by rebels, not by the government, and there was no evidence of a pattern of persecution tied to Vonhm, who served many years in a variety of government posts following these tragic events. The retaliatory rape of Vonhm's wife, though perpetrated by a leader of Taylor's security forces who has now fled Liberia, was an isolated criminal act. It was not, without more, evidence of political persecution. See Alemu v. Gonzales, 403 F.3d 572, 575 (8th Cir. 2005). Finally, even if credible, Vonhm's unsupported testimony describing two detentions by Taylor's security forces in which Vonhm did not suffer physical injury other than a bruised shoulder did not establish conduct sufficiently severe to constitute past persecution. See Yang v. Gonzales, 413 F.3d 757, 759-60 (8th Cir. 2005).

Vonhm further argues that he established a well-founded fear of future persecution because, although Taylor has resigned and fled the country, his now-rebel forces "are still at large and are not disarmed." The BIA was not required to credit Vonhm's unsupported claim that he was a target of political persecution by the Taylor regime in early 2000, when Vonhm held a high government office in that regime. But in any event, Taylor is no longer in power, there is no evidence the current government has any reason to persecute Vonhm, and many members of his family are living in Liberia without incident. The civil war has ended and country conditions have improved.[1] The record contains considerable evidence that Liberians remain subject to violent tribal conflict and random violence. But even if Vonhm's fear of returning is subjectively reasonable, it is not an objectively well-founded fear of future persecution on account of his tribal membership or past political opinion. In these circumstances, we must uphold the BIA's determination that he is not eligible for asylum.[2]

Finally, Vonhm argues that the BIA erred in finding him ineligible for withholding of removal and relief under the Convention Against Torture. Our conclusion upholding the denial of asylum requires the denial of these claims as well. See Alemu, 403 U.S. at 576.

---

[1]In April 2003, Vonhm was granted temporary protected status as an eligible national of a country designated by the Attorney General as too unsafe to require the return of any alien subject to removal. See 8 U.S.C. § 1254a. However, the designation of Liberia has now been terminated.

[2]Vonhm also argues that the IJ erred in making an adverse credibility finding. However, the BIA adopted the IJ's decision on the merits without referring to Vonhm's credibility. We review only the final agency action by the BIA. Thus, there is no adverse credibility finding to review. See Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006) ("Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA.").

## II. Did Vonhm Receive a Fair Hearing?

At Vonhm's initial appearance in October 2002, the IJ explained asylum procedure and continued the proceedings until March 2003. At the March 2003 appearance, Vonhm said he did not have an attorney and requested more time "to find evidence on my own behalf." The IJ set the final hearing for April 28, 2004, noting that this gave Vonhm thirteen months "to try and get an attorney [and] send in an affidavit about why you fear returning to Liberia." Five days before the hearing, Vonhm filed a lengthy affidavit in support of his asylum application. At the hearing, he also submitted the 2003 Department of State country report for Liberia plus recent media reports suggesting that Liberia remained a war-torn and dangerous place even though former President Charles Taylor went into exile in August 2003. The IJ and government counsel then questioned Vonhm about the facts stated in his asylum application, asylum interview, and supporting affidavit. Before concluding the hearing, the IJ gave Vonhm an additional opportunity to explain why he feared returning to Liberia.

Vonhm argues that he was denied the fundamentally fair hearing that due process requires. See Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004). He complains that the IJ failed to advise him at the April 28 hearing that he had a right to present affirmative evidence in his own behalf. Instead, he was "peppered with questions" by government counsel and the IJ. Vonhm argues he was prejudiced by this inadequate procedure because, as a result of just answering questions, his hearing testimony did not cover portions of his asylum application that the IJ did not discuss in her initial decision denying the application.

We reject this contention primarily because it ignores the lengthy affidavit that Vonhm filed just days before the April 28 hearing (which the IJ had encouraged him to submit at the March 2003 appearance). This affidavit was affirmative evidence in narrative form supporting the asylum application. The IJ reasonably treated the

affidavit as Vonhm's initial hearing statement. She explained to Vonhm at the start of the hearing that government counsel would ask him questions, the IJ might interject additional questions, and then Vonhm could add testimony "if we've missed anything about why you fear returning to Liberia." Vonhm said he was satisfied with this procedure. This hearing was readily distinguishable from that in Al Khouri, where the IJ circumscribed the asylum applicant's testimony by instructing him only to answer the questions asked and then unfairly concluded that the lack of detailed responses undermined the applicant's credibility. 362 F.3d at 465. Here, the IJ gave Vonhm more than a year to prepare for the evidentiary hearing, encouraged him to find an attorney, did not curtail his testimony at the April 28 hearing, and did not discredit his showing for lack of detail. We conclude that the IJ gave Vonhm a full and fair opportunity to present his claims for asylum, withholding of removal, and relief under the Convention Against Torture.

For the foregoing reasons, we deny the petition for review.

_____