# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3169

_____

Yan Zhang

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 6, 2017
Filed: March 16, 2017
[Unpublished]

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Yan Zhang petitions for review of the Board of Immigration Appeals' (BIA) decision denying him asylum, withholding of removal, and protection under the Convention Against Torture (CAT). For the reasons discussed below, we deny the petition.

## I.    BACKGROUND

Zhang is a native and citizen of China. He is married with one adult child. According to Zhang's testimony, he became a Christian in 2008 when a friend introduced him to the religion after noticing that Zhang was lonely, unhappy, drinking heavily, and on the verge of a divorce. Because there were no local churches in the area, Zhang attended informal gatherings with his friend at his friend's mother's house. At the meetings, the group read the Bible, prayed, and ate together. On August 5, 2009, seven or eight police officers charged into the home during the family-church meeting and accused the participants of being in a cult and participating in an illegal, antigovernment activity. The police searched the home, confiscated Bibles, handcuffed the participants, and transported them to the police station.

Zhang testified that upon arrival at the police station, two officers questioned him about the family-church meetings. When Zhang denied being in a cult or participating in antigovernment activities, the officers allegedly slapped his face, punched his stomach, kicked him, and used an "electric stick" to beat him. The interrogation and beating lasted approximately ten minutes. Zhang was then taken to a detention room where the officers told the other detainees that "if this guy doesn't behave, you need to take care of him really good." Consequently, the other detainees hit him for approximately ten minutes. Zhang testified that on the second day of his detention the same two officers from the first day asked him the same questions about antigovernment and anticommunist activities. He denied being involved in such activities. Again, the officers beat him using their hands and the electric stick. In contrast to his testimony, however, Zhang's application for asylum only mentions being beaten with the electric stick on the second day, not the first.

Zhang was released on the third day after his wife paid a fine of 5,000 Renminbi. He signed a form promising never to attend the family-church meetings

and was required to report to the local police station each week to "make some confession." He never sought medical attention and never attended the family-church meetings again because he feared he would "be caught and . . . beaten up again." Zhang originally testified that he did not return to work after the August 5, 2009, incident because his boss told him not to return until he "totally confess[ed] what [he had] done." However, he later testified that he lost his job in January 2009 because he missed work due to a drinking problem. He qualified the later statement by saying that he was not fired right away. When asked why he changed his termination date from August 2009 to January 2009, he stated that he did not know and that he was not the one who made the change.

Zhang decided to leave China because officers checked on him regularly at his home and he "was so scared and . . . felt a lot of pressure." A friend helped him obtain an American visa, and on December 26, 2009, he arrived in the United States as a nonimmigrant visitor authorized to remain in the country for six months. Zhang was baptized in the United States but did not attend church regularly. Zhang testified that he has had no contact with any members of the family church since coming to the United States and has only spoken to his wife a few times since 2011. According to Zhang's wife, the Chinese police threatened that if Zhang did not come back soon, his "guilt would be more grav[e]." Zhang overstayed his visit in the United States. On June 4, 2010, Zhang filed a written application for asylum and related relief based on persecution for his religion and political opinion.[1] He amended his application twice, making hand-written changes to the two later applications. On July 23, 2010, Zhang was placed in removal proceedings by a notice to appear (NTA), charging Zhang with deportability under § 237(a)(1)(B) of the Immigration and Nationality Act (INA), for

_____

[1]Although Zhang's application for asylum states that he is seeking asylum or withholding of removal based on religion *and* political opinion, the administrative record and Zhang's brief mention only religious persecution by the Chinese government as the basis for his request for relief. Thus, we focus our analysis on Zhang's claim of religious persecution.

"remain[ing] in the United States for a time longer than permitted." On August 16, 2010, Zhang admitted the allegations in the NTA, conceded the charge of removability, and stated that he would be seeking asylum, withholding of removal, and relief under the CAT.

On February 13, 2014, the immigration judge (IJ) denied Zhang's application for immigration relief and ordered that he be removed to China. The IJ found that Zhang lacked credibility based on several discrepancies. The IJ pointed out that Zhang's testimony differed from his asylum application in regard to how he was beaten by the officers while being detained and when and why he was terminated from his job. Alternatively, the IJ held that even if Zhang were credible, he "failed to establish that he . . . suffered past persecution or a well-founded fear of future persecution." The "[m]inor beatings and brief detention[]" Zhang endured did not rise to the level of persecution. Based on his lack of knowledge of Christian churches in China, his irregular church attendance while in the United States, and the absence of any evidence suggesting he would be unable to attend an approved Christian church that would meet his religious needs, the IJ held that Zhang failed to prove a well-founded fear of persecution. Because Zhang failed to meet the lower burden of proof required for asylum, he automatically failed to meet the "considerably higher" standard for withholding of removal. The IJ also denied Zhang's application for relief under the CAT.

Zhang then appealed to the BIA. The BIA did "not find clear error in the [IJ's] adverse credibility finding" because Zhang's testimony was inconsistent with his asylum application. The BIA also held that the IJ committed no clear error in denying asylum based on the alternative grounds. According to the BIA, Zhang's encounter with the police was not severe enough to constitute persecution. And, because the country reports revealed that Zhang could relocate to an area where family-church meetings were more accepted, Zhang's fear of future persecution was not objectively reasonable. Finding that Zhang failed to meet the burden for asylum, the BIA held

-4-

that "he also failed to meet the higher burden for withholding of removal." Finally, the BIA held that the record supported the IJ's determination that Zhang failed to show that if he returned to China, it was more likely than not that he would be tortured, and thus denied relief under the CAT. The BIA dismissed the appeal.

Zhang now appeals arguing that the BIA erred by (1) affirming the IJ's credibility finding; (2) holding that Zhang failed to establish past persecution; (3) holding that Zhang failed to establish a well-founded fear of future persecution; (4) denying withholding of removal; and (5) denying relief under the CAT.

## II. DISCUSSION

### A. Standard of Review

Where "the BIA's decision is the final decision of the agency, it is the subject of our review." Garcia-Colindres v. Holder, 700 F.3d 1153, 1156 (8th Cir. 2012) (quoting Falaja v. Gonzales, 406 F.3d 1076, 1081 (8th Cir. 2005)). However, where the BIA accepted the findings or reasoning of the IJ, we also include the IJ's decision as part of the final agency decision. Id. "We review the determination regarding eligibility for asylum, withholding of removal, and relief under the CAT for substantial evidence, which is an extremely deferential standard of review." Khrystotodorov v. Mukasey, 551 F.3d 775, 781 (8th Cir. 2008). We will only overturn the BIA's decision if we find that "no reasonable fact finder could fail to find the requisite fear of persecution." Cubillos v. Holder, 565 F.3d 1054, 1056 (8th Cir. 2009) (quoting De Brenner v. Ashcroft, 388 F.3d 629, 636 (8th Cir. 2004)).

### B. Credibility

Where an applicant seeks immigration relief, he "bears the burden of satisfying the IJ that [his] testimony is credible." Fesehaye v. Holder, 607 F.3d 523, 526 (8th

Cir. 2010) (quoting Averianova v. Mukasey, 509 F.3d 890, 895 (8th Cir. 2007)). Credibility determinations may be based upon the applicant's conduct, sincerity, or reaction to questioning, as well as the consistency and reasonableness of the applicant's story. 8 U.S.C. § 1158(b)(1)(B)(iii). The applicant must present testimony that is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his alleged fear." Matter of Dass, 20 I. & N. Dec. 120, 124 (B.I.A. 1989). Zhang argues that substantial evidence supports the finding that the BIA erred when it affirmed the IJ's adverse credibility based on "testimony [that] was [allegedly] internally inconsistent and at odds with [Zhang's] asylum statement and application." We disagree.

First, there was a discrepancy between Zhang's written asylum application and his oral testimony regarding the details of his assaults. In his asylum application, Zhang claimed that on the first day of his detention the officers slapped, grabbed, punched, and kicked him. On the second day of his detention, the officers allegedly beat him again; this time he states that they used an "electric baton to strike [his] belly." Zhang testified, however, that he was hit with the "electric stick" on both days, not just on the second day of his detention. Second, Zhang provided inconsistent testimony regarding when he was terminated from his job. His first asylum application shows that he was terminated in August 2009. However, the two subsequent asylum applications state that he was terminated in January 2009. When asked about the discrepancy, Zhang testified that he changed the date to January 2009 because he had a drinking problem and was unable to work. However, he also testified that he was not actually fired until August 5, 2009, when he was arrested. When asked again about the change on his asylum application, he simply stated, "I don't know. I was not the one who change[d] it. I don't know. Not me." Third, as briefly mentioned above, Zhang gave conflicting reasons for his termination, first testifying that he lost his job because of the arrest, then stating that he lost his job because of poor job performance due to a drinking problem and marital issues, and

-6-

then finally stating that it was a combination of his arrest and poor work performance that led to his termination.

Although "such facts may seem like minutiae, . . . the Act expressly provides that 'a trier of fact may base a credibility determination on,' among other things, 'the consistency between the applicant's or witness's written and oral statements.'" Ali v. Holder, 776 F.3d 522, 527 (8th Cir. 2015) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Here, there were several unexplained inconsistencies, and "[t]here is no presumption of credibility." 8 U.S.C. § 1158(b)(1)(B)(iii). Thus, substantial evidence supports the BIA's and IJ's adverse credibility determination.

## C.    Asylum

To be eligible for asylum, the applicant must establish that he is a "refugee." Id. § 1158(b)(1)(B)(i). A refugee is defined as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Id. § 1101(a)(42). Zhang argues that substantial evidence supports the finding that he established past persecution on account of his religion. We disagree.

Persecution is "the infliction or threat of death, torture, or injury to one's person or freedom on account of a statutory ground." Makatengkeng v. Gonzales, 495 F.3d 876, 882 (8th Cir. 2007) (quoting Woldemichael v. Ashcroft, 448 F.3d 1000, 1003 (8th Cir. 2006)). It is an "extreme concept that does not encompass low-level intimidation and harassment." Ladyha v. Holder, 588 F.3d 574, 578 (8th Cir. 2009)

(quoting Gutierrez-Olivares v. Mukasey, 533 F.3d 946, 949 (8th Cir. 2008)). It is also well-established in this circuit that detentions lasting only a few days and minor beatings do not amount to persecution. Malonga v. Holder, 621 F.3d 757, 765 (8th Cir. 2010); Tebyasa v. Holder, 593 F.3d 707, 711 (8th Cir. 2010). Even where an applicant was detained and beaten on two separate occasions, we held that it was not enough to constitute persecution. Alyas v. Gonzales, 419 F.3d 756, 761 (8th Cir. 2005). Thus, although Zhang certainly suffered some injury, physical and otherwise, due to the beatings he endured over the course of his three-day detention, substantial evidence support's the BIA's and IJ's holding that Zhang failed to satisfy his burden of showing that the harm he suffered rose to the level of persecution. This was "an isolated occurrence, [not] part of a continuing effort to persecute [Zhang]." Malonga, 621 F.3d at 765. Zhang's incident, while unfortunate and troubling, falls short of persecution.

Zhang also argues that substantial evidence supports the finding that he established a well-founded fear of future persecution. Again, we disagree.

> An applicant has a well-founded fear of persecution if: (A) The applicant has a fear of persecution in his or her country of nationality . . . ; (B) There is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (C) He or she is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear.

8 C.F.R. § 1208.13(b)(2)(i). There is both an objective and subjective component to this standard. Zhang "must show that he subjectively fears persecution, and that there is credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's country." Singh v. Gonzales, 495 F.3d 553, 556 (8th Cir. 2007) (quoting Mamana v. Gonzales, 436 F.3d 966, 968 (8th Cir. 2006)).

-8-

Here, although Zhang may have a genuine fear of future persecution, his fear is not objectively reasonable. Zhang admitted that he was unaware that the Chinese government allowed registered churches in China because there were no registered churches near his home. Thus, if Zhang really wanted to attend church, he could not reasonably fear doing so in China so long as he attended a registered church. Moreover, the United States Department of State's 2012 International Religious Freedom Report on China confirmed that "[i]n some parts of the country . . . local authorities tacitly approved of or did not interfere with the activities of [even] unregistered groups." Zhang could relocate to an area where home churches are more widely accepted by the Chinese government. Substantial evidence supports the BIA's and IJ's finding that Zhang failed to establish fear of future persecution. Accordingly, the BIA and IJ did not err in denying Zhang's application for asylum.

### D.    Withholding of Removal

Zhang alternatively argues that he is eligible for withholding of removal. "To qualify for withholding of removal, [Zhang] must show a 'clear probability' of persecution in [China,]" which is a much more stringent standard than the standard for asylum. Cubillos, 565 F.3d at 1058. Because Zhang failed to meet the lower standard for asylum, his claim for withholding of removal necessarily fails. See Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005).

### E.    Relief Under the CAT

Under the CAT, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Zhang argues that being arrested and beaten in China constitutes torture, and thus the BIA erred by affirming the IJ's denial of relief under the CAT. "A separate analysis, however, is required only when there is evidence the alien may be tortured for reasons unrelated to his claims for asylum and withholding of

removal." <u>Guled v. Mukasey</u>, 515 F.3d 872, 882 (8th Cir. 2008). Here, Zhang provided no evidence, outside of the evidence presented in support of his asylum and withholding of removal claims, supporting an independent reason for fearing torture if he returns to China. Thus, the BIA and IJ did not err in denying relief under the CAT.

## III. CONCLUSION

We affirm the denial of asylum, withholding of removal, and CAT relief as determined by the IJ and BIA, and deny the petition for review on appeal.

_____