# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1328

_____

Xiaojie He

*Petitioner*

v.

Merrick B. Garland,[1] Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 17, 2021
Filed: February 4, 2022

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Xiaojie He, a twenty-eight-year-old native of China, entered the United States in April 2012 without inspection. The Department of Homeland Security (DHS)

---

[1]Merrick B. Garland has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

initiated removal proceedings. He conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming past persecution and a well-founded fear of future persecution and torture in China because of his Christian faith. After a hearing at which He testified, the Immigration Judge (IJ) denied relief. The Board of Immigration Appeals (BIA) affirmed with an opinion. He seeks judicial review of the final order of removal. See 8 U.S.C. § 1252. He does not challenge the denial of his application for relief under the CAT. We deny the petition for review.

## I. The Administrative Proceedings

At the May 24, 2018 removal hearing, He testified that he had two encounters with local Chinese officials that are central to his claim of religious persecution. The first occurred in October 2011 when He first attended a house-church meeting at a friend's invitation. Four or five police officers soon charged in, said the gathering was illegal, and took He and the other seven or eight attendees to a police station, where an officer punched He in the chest once and kicked He in the knees and shins. He did not seek medical attention for these minor injuries. The police detained He for approximately 15 days, then warned him "not to participate in illegal gatherings anymore." He was not given enough to eat while in detention. In January 2012, He attended a house-church service for the second time. Again police broke up the meeting, this time detaining He for approximately 30 days, but inflicting no physical harm. On release, officers advised He to report weekly. Instead, his father arranged for "snakeheads" to transport He to Mexico's border with the United States (via Russia and Cuba, using a Chinese passport), where he illegally entered the United States to seek asylum.

The IJ found He's testimony credible. In denying relief, the IJ's Decision summarized He's testimony in detail, further noting: (i) He does not know the denomination of the faith that was practiced during the two gatherings he attended.

-2-

"He thinks that it was a Christian faith because his friend told him that it was." (ii) In between the two gatherings, He talked to his friend about going to church but did not go because of the first detention. In his hometown He knew there were Christian churches, but He did not attend any because "after being beaten up he was afraid," because "he had heard that if you go to these churches you do not learn anything," and because "he just planned with his dad on how to come to the United States." (iii) He does not know anyone who attended a Catholic church in China. He has heard of people "encountering problems" when they attend Christian gatherings in a home but has never heard of anyone getting in trouble for attending a Christian government-authorized church.

The administrative record includes a lengthy United States Department of State report titled "China (Includes Tibet, Hong Kong, and Macau) 2016 International Religious Freedom Report." The Report estimated there were 657 million religious believers in China at that time, including over 70 million Christians. The People's Republic of China constitution permits "freedom of religious belief but limits protections for religious practice to 'normal religious activities' and does not define 'normal.'" Catholic and Protestant are two of the five "patriotic religious associations" that may register with the government and hold officially permitted worship services. But some Chinese Christians practice their faith in unregistered "home churches" that are not recognized by the Chinese government. "Religious affairs officials and security organs" scrutinize and restrict the religious activities of registered and unregistered religious groups. There were continued reports of detention, physical abuse, imprisonment, and harassment of religious group adherents for activities related to their beliefs and practices. "Local authorities pressured religious believers to affiliate with patriotic associations and used administrative detention . . . to punish members of unregistered religious or spiritual groups." The State Administration for Religious Affairs says that family and friends may worship together at home without registering, but "authorities still regularly harassed and detained small groups that did so." Religious regulations vary by province. "[I]n some areas, members of unregistered

churches said they had more freedom than in the past to conduct religious services, as long as they gathered only in private and kept congregation numbers low," but in some areas, "authorities also shut down churches that tried to maintain a low profile."

The IJ found that He is not eligible for asylum because he failed to establish either past persecution or a well-founded fear of future persecution. Specifically, the IJ found that the evidence of the harm He described during the two detentions, "taken together" and including "the assault by the policeman," "does not rise to the level of persecution as contemplated by the [Immigration and Nationality Act]." The IJ further found that He failed to demonstrate a well-founded fear of future persecution. He's statement that he will not attend a Christian church in China because "you do not learn much there . . . is pure conjecture as he has never attended a Christian church in China and he only heard this from a friend." His assertion that "the Chinese government will continue to look for him if he is returned" is speculation. He "was allowed to leave China in 2012 with a Chinese passport," has been away from China for over six years at the time of the hearing, and "presented no evidence that . . . anyone associated with the Chinese government is looking for him, or that he would be harmed or persecuted . . . if he practices his Christian religion in China." Nor has He "shown that he could not reasonably relocate within China to avoid any future harm if necessary to do so."

The BIA adopted and affirmed the IJ's decision in a two-page opinion. The BIA agreed with the IJ that the harm to He from his two detentions "did not rise to the level of persecution"; that He "did not meet his burden of establishing a well-founded fear of persecution on account of his religion" based on information in the above-summarized State Department 2016 Report; and that, "[e]ven if Chinese government officials have asked about [him] following his departure 7 years ago, [He] has not shown that a reasonable person in his circumstances would fear persecution, rather than discrimination or harassment, if he is returned to China." The BIA added, "Nor does the evidence show a 'pattern or practice' of persecution of adherents to

-4-

unregistered Christian house churches," citing Woldemichael v. Ashcroft, 448 F.3d 1000, 1004 (8th Cir. 2006).

He petitions for review of the BIA's final decision. Relying for the most part on decisions from other circuits, he argues the BIA erred in ruling that he failed to demonstrate past persecution and a well-founded fear of future persecution, making him eligible for exercise of the Attorney General's discretion under the Immigration and Nationality Act (INA) to grant asylum to a noncitizen who qualifies as a refugee. See 8 U.S.C. § 1158(b)(1).

## II. Discussion

**A.  The Standard of Review.**  The INA defines refugee as a noncitizen who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."   8 U.S.C. § 1101(a)(42)(A). "Persecution is the infliction or threat of death, torture, or injury to one's person or freedom on account of a statutory ground such as religion." Rife v. Ashcroft, 374 F.3d 606, 612 (8th Cir. 2004) (quotation omitted).  At the outset, He argues that we review the BIA's persecution determinations *de novo* because they are questions of law. Though there are circuit court decisions supporting this contention, it is contrary to controlling Supreme Court precedents.

In INS v. Cardoza Fonseca, 480 U.S. 421 (1987), the Court noted that § 1101(a)(42) was added to the INA in the Refugee Act of 1980, which codified the procedures for granting asylum and established that eligibility "depends entirely on the Attorney General's determination that an alien is a 'refugee' . . . . Thus, the

'persecution or well-founded fear of persecution' standard governs the Attorney General's determination whether an alien is eligible for asylum." Id. at 427-28.[2]

In INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (emphasis added), the Court addressed and resolved this standard of review issue:

> The BIA's determination that Elias-Zacarias was not *eligible* for asylum must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' 8 U.S.C. § 1105a(a)(4). It can be reversed only if the evidence presented by Elias-Zacarias was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.

In other words, the Court determined that the ultimate question of past persecution or well-founded fear of future persecution, as well as the findings underlying that determination, are judicially reviewed under the substantial evidence standard that applies to agency findings of fact. As the Court subsequently observed, "[w]ithin broad limits the law entrusts the agency to make the basic asylum eligibility decision here in question." INS v. Orlando Ventura, 537 U.S. 12, 16 (2002).

Though a well-founded fear was the persecution standard at issue in Elias-Zacarias, the Court expressly adopted the substantial evidence standard of review for both of the asylum eligibility standards identified in Cardoza Fonseca -- "persecution or well-founded fear of persecution." It is irrelevant that the BIA, for internal agency

---

[2]The Court further noted that the Attorney General has discretion to deny asylum to an alien who meets the definition of refugee. Id. at 428 n.5. That is not at issue. He was denied asylum and withholding of removal based on the BIA's finding that he is not *eligible* for the exercise of discretion.

reasons, reviews the IJ's determination of past persecution *de novo*.[3] Thus, as the majority of Eighth Circuit opinions have recognized, our standard of review is whether "substantial evidence in the administrative record supports the BIA's finding that [He] failed to prove past persecution," as well as the finding that He failed to establish a well-founded fear of future persecution. Martin Martin v. Barr, 916 F.3d 1141, 1144-45 (8th Cir. 2019).

**B. Past Persecution.** It is well-established that "[p]ersecution is an extreme concept that involves the infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected characteristic." Id. at 1144 (quotation omitted); see Alavez-Hernandez v. Holder, 714 F.3d 1063, 1065-67 (8th Cir. 2007) (religiously-motivated physical attacks in a village not "severe enough to rise to the level of persecution"). "Low-level intimidation and harassment does not rise to the level of persecution." Eusebio v. Ashcroft, 361 F.3d 1088, 1090-91 (8th Cir. 2004). Neither do brief detentions accompanied by beatings. See Njong v. Whitaker, 911 F.3d 919, 923 (8th Cir. 2018), and cases cited. "Threats alone constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." Padilla-Franco v. Garland, 999 F.3d 604, 608 (8th Cir. 2021) (quotation omitted). Likewise, religious or ethnic discrimination generally does not qualify as persecution. See Fisher v. INS, 291 F.3d 491, 494-95, 497 (8th Cir. 2002).

Here, the BIA adopted the IJ's finding that the evidence of He's two detentions, taken together and including the initial assault by a policeman, "does not rise to the

_____

[3]In Xue v. Lynch, 846 F.3d 1099, 1105-06 n.11 (10th Cir. 2017), the Tenth Circuit suggested that this is an important new administrative procedure that casts doubt on "the Supreme Court's twenty-plus-year-old decision in" Elias-Zacarias. With all due respect, we conclude that is not a proper basis for a circuit court to ignore controlling Supreme Court precedent.

level of persecution." That determination is consistent with our prior past persecution decisions. He properly notes that his detentions -- fifteen and thirty days -- were longer than the detentions in Eusebio and Njong. Length of detention is certainly relevant and in this case seems excessive. But the totality of the circumstances is determinative. The 2016 International Religious Freedom Report stated that use of "administrative detention" to pressure religious believers to affiliate with patriotic associations was not uncommon. He presented no evidence of what efforts were made to gain his release, and without more the IJ could reasonably find that the detentions fell in the category of low-level intimidation and harassment. Thus, as in Yang v. Gonzales, 413 F.3d 757, 759-60 (8th Cir. 2005), He's "vague claim that he was detained and interrogated for one month . . . does not describe conduct severe enough to establish past persecution."

He further argues that he suffered past persecution "*per se*" because the Chinese government, by making him sign a paper in which he promised to abandon his religious practice (a paper he did not read), forbade him from openly and freely practicing his religion. Consistent with the fact-specific teaching of Elias-Zacarias, we have not recognized *per se* persecution. Moreover, the facts of this case would not support the claim even if we did. He testified that he made two attempts to sample a new faith -- one that he could only identify as Christian based on what a friend told him. Both gatherings were forcibly interrupted by local police, government interference that would be intolerable in this country. But it was also at least facially contrary to the Chinese government's constitution and laws, and He made no further attempt to attend one of the many Christian churches, registered and unregistered, that approximately 70,000,000 Chinese were attending. Instead, he packed his bags and entered this country illegally to seek asylum. On these thin facts, we have no difficulty concluding that substantial evidence on this administrative record supports the BIA's past persecution determination.

**C. Well-Founded Fear of Future Persecution.** He next contends that the BIA erred in finding he lacked a well-founded fear of future persecution. This eligibility criterion has both an objective and subjective component. See Singh v. Gonzales, 495 F.3d 553, 556 (8th Cir. 2007). Neither the IJ nor the BIA questioned He's subjective fear of being returned to China.

Having failed to establish past persecution, He is not entitled to a presumption that he has a well-founded fear. See 8 C.F.R. § 1208.16(b)(1)(i). "Without the aid of the presumption, an asylum applicant may prove a well-founded fear of future persecution by showing an objectively reasonable fear of *particularized* persecution," or by showing a pattern or practice of persecution. Woldemichael, 448 F.3d at 1004, citing 8 C.F.R. § 208.13(b)(2)(iii).

The IJ found that He failed to establish an objective well-founded fear because his fear of religious persecution if he returns to China is "speculative." The BIA agreed, citing portions of the 2016 International Religious Freedom Report -- that there are more than 70,000,000 Catholic and Protestant adherents in China, and that house church groups in some areas "had more freedom than in the past to conduct religious services, as long as they gathered only in private and kept congregation numbers low." The BIA found that a letter from He's father stating that Chinese police were searching for He within months of the May 2018 hearing, six years after his departure, did not show "that a reasonable person in his circumstances would fear persecution, rather than discrimination or harassment, if he is returned to China."

He argues that other statements in the 2016 Report contradict the sentence the BIA relied on, and that his prior arrests and detentions for attending house-church gatherings show that "[i]t is more than objectively reasonable to expect that he would face the same treatment if he returns to China," as evidenced by his father's letter. But that is not our governing standard of review. Rather, "to obtain judicial reversal of the BIA's determination, [He] must show that the evidence he presented was so

-9-

compelling that no reasonable factfinder could fail to find the requisite fear of persecution. That he has not done." Elias-Zacarias, 502 U.S. at 483-84. As in Yan Zhang v. Sessions, a factually similar case, "[s]ubstantial evidence supports the BIA's and IJ's finding that [He] failed to establish fear of future persecution." 681 F. App'x 554, 560 (8th Cir. 2017).

The BIA also found, based on the 2016 Report, that He did not show a pattern or practice of persecution of "adherents to unregistered Christian house churches," only harassment and brief detentions of some group gatherings at unregistered churches, actions that do not rise to the level of persecution. "A pattern or practice of persecution must be systemic, pervasive, or organized." Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004). He argues the 2016 Report combined with his prior detentions support a finding of pattern or practice. Once again, however, that contrary finding is not compelled by the evidence in the administrative record.

As He failed to establish eligibility for asylum, he "necessarily cannot meet the more rigorous standard of proof for withholding of removal." Martin Martin, 916 F.3d at 1145 (quotation omitted). Accordingly, we deny the petition for review.

_____