# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2649
No. 06-3712

_____

|  |  |  |
|---|---|---|
| Hamidur Miah, also known as Syed Mia, | * * * | |
| Petitioner, | * * | |
| | * | Petitions for Review of Orders |
| v. | * | of the Board of Immigration Appeals. |
| | * | |
| Michael B. Mukasey, Attorney General of the United States of America, | * * * * | |
| | * | |
| Respondent. | * | |

_____

Submitted:  October 15, 2007
Filed:  March 25, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Hamidur Miah, a native and citizen of Bangladesh, was admitted to the United States in 1989 as a non-immigrant student. After attending colleges in Florida and Minnesota, he started a computer company, which violated his non-immigrant student status. The Department of Homeland Security ("DHS") commenced removal proceedings and later charged Miah with an additional ground for removal, his conviction of two crimes involving moral turpitude. See 8 U.S.C. § 1227(a)(2). Miah

conceded removability and filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

The immigration judge ("IJ") denied Miah asylum and withholding of removal, granted CAT relief, and ordered him removed to any country except Bangladesh. Both parties appealed. The Board of Immigration Appeals ("BIA") dismissed Miah's appeal, sustained the government's appeal, and entered a final order of removal. Miah petitioned for judicial review of the BIA's decision. One month later, he married a United States citizen and filed a motion to reopen with the BIA based on his wife's pending petition for an immediate relative visa on his behalf. The BIA denied the motion to reopen. Miah petitioned for judicial review of that decision. We consolidated and now deny the two petitions for review.

## I. The Removal Order

**A. Asylum and Withholding of Removal.** Miah appeals the BIA's determination that he is ineligible for asylum or withholding of removal to Bangladesh. First, Miah claims that he is a victim of past persecution who has a well-founded fear of future persecution on political grounds if removed to Bangladesh. Miah contends he was an active member of the Bangladesh National Party ("BNP") and, while a student in Dhaka, the capital city, he was kidnaped and beaten by a student wing of the then-dominant Awami League party during a 1987 rally. Though he was released that same day, did not sustain injuries, and did not file a police report, Miah testified that he fears the Awami League may kidnap him again because his family continues to support the BNP.

Second, Miah claims a well-founded fear of future persecution by Hazi Abdul Hashem Hashu, a Dhaka ward commissioner who has attempted to seize two small parcels of land that Miah purchased in 1994. Miah testified that Hashu has removed name plates identifying Miah's ownership and chased servants of Miah's family off the land with guns, knives, and bombs; that Hashu supporters confronted the family

-2-

chauffeur and his wife, then living on one parcel, shot the chauffeur, and beat his wife; and that Hashu associates robbed and beat Miah's brother, mistakenly believing he was Miah. Miah's father has attempted to use the Bangladeshi courts to thwart Hashu's efforts to seize the property, but without success. The record includes a State Department letter reporting that the American embassy in Dhaka has identified Hashu as "the current Ward 43 Commissioner," a "very influential person involved as the head of a criminal gang," and an "active leader" of the now-ruling BNP party. The BIA rejected these claims on multiple grounds.

1. The BIA agreed with the IJ that Miah is ineligible for asylum because he did not show "extraordinary circumstances" excusing his failure to apply for asylum within one year of arriving in the United States. See 8 U.S.C. § 1158(a)(2). Miah argues the BIA erred because changed conditions in Bangladesh excuse his untimely application. The government responds that 8 U.S.C. § 1158(a)(3) deprives us of jurisdiction to review this determination. The government is correct. See, e.g., Bejet-Viali Al-Jojo v. Gonzales, 424 F.3d 823, 826-27 (8th Cir. 2005). This contention is without merit. The denial of asylum must be upheld.

2. To be eligible for withholding of removal to a particular country, an alien must show a "clear probability" that he would suffer persecution on account of a protected ground such as political opinion or membership in a social group. See 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A); Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005). Agreeing with the IJ, the BIA ruled that Miah is not eligible for withholding of removal to Bangladesh because: (I) his testimony of past political persecution by the Awami League in 1987 was not credible and, even if true, did not rise to the level of persecution, and (ii) he does not have a well-founded fear of future persecution by Hashu on account of a protected ground because the record does not establish that wealthy landowners comprise a particular social group in Bangladesh or that Hashu's harassment of Miah's family was anything more than "violent conduct by a single ruthless criminal . . . driven by the desire to accumulate land." Miah challenges both rulings. We review the agency's fact finding under the deferential

-3-

substantial evidence standard.  Menendez-Donis v. Ashcroft, 360 F.3d 915, 918-19 (8th Cir. 2004).  To overcome the BIA's adverse determination, Miah must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."  INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

Miah argues that his kidnaping and abuse by supporters of the Awami League established his claim of past persecution.  We disagree.  First, the agency's adverse credibility finding must be upheld because it is "supported by a specific, cogent reason for disbelief" -- discrepancies in testimony by Miah and a supporting witness regarding the alleged political kidnaping.  Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006) (quotations omitted).  Second, substantial evidence supports the BIA's finding that, even if true, this isolated incident does not compel a finding of past persecution.  See Ngure v. Ashcroft, 367 F.3d 975, 990 (8th Cir. 2004); Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004).  Having failed to prove past persecution, Miah is not entitled to a presumption that his life or freedom will be threatened in the future if he is removed to Bangladesh.  See 8 C.F.R. § 1208.16(b)(1)(I).

Miah argues that the BIA erred in concluding that the harm he fears from Hashu if removed to Bangladesh is not persecution on account of a protected ground because, as a landowner, he is a member of a particular social group.  He relies on Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 668-73 (7th Cir. 2005), where the court held that wealthy educated cattle farmers in Columbia were members of a particular social group for asylum purposes because they were targeted for persecution on that ground by entrenched communist guerillas.  The record in this case falls far short of demonstrating that property owners in Bangladesh are subject to comparable, systematic persecution.  The evidence shows, at most, that Miah's family has been harassed by a greedy and powerful criminal, Hashu.  This is not a compelling showing of persecution on account of a protected ground.  See Vonhm v. Gonzales, 454 F.3d 825, 828 (8th Cir. 2006).  Thus, Miah failed to prove a "clear probability" that he

would suffer persecution on account of his political opinions or membership in a social group if removed to Bangladesh.

**B. CAT Relief.** Miah argues the BIA erred when it reversed the IJ's determination that he warrants withholding of removal relief under the CAT based upon the likelihood he would be tortured by Hashu if removed to Bangladesh. An alien is eligible for CAT relief if he establishes "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The likely torture need not be linked to a statutorily protected ground, but it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official." 8 C.F.R. § 1208.18(a)(1); see Castellano-Chacon v. INS, 341 F.3d 533, 551-52 (6th Cir. 2003). We must affirm the BIA's decision unless "the evidence was so compelling that a reasonable factfinder must have found the alien entitled to relief under the Convention." Ngure, 367 F.3d at 992.

The BIA concluded that Miah does not qualify for CAT relief on multiple grounds, but we need consider only one -- the absence of evidence that Hashu's alleged violent criminal conduct is done at the instigation of or with the consent or acquiescence of a public official. "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007) (quotations omitted). Here, the BIA found insufficient evidence of government acquiescence in Hashu's criminal activities:

> [A]lthough Hashu is an elected official, his rogue efforts to take control of other people's property fall outside of his official duties. Moreover, even if we considered Hashu to be acting in an official capacity, the government's efforts to investigate and prosecute him for his illegal activities militate against a finding that it would consent or acquiesce to Hashu's efforts to torture [Miah] in the future. See Matter of S-F, 22 I&N Dec. 1306, 1312-13 (BIA 2000); 8 C.F.R. § 1208.18(a)(7)

(providing that acquiescence requires that a public official, prior to the activity constituting torture, has awareness of such activity and thereafter breaches the legal responsibility to intervene).

After careful review, we conclude that substantial evidence supports this decision. There is evidence that Bangladeshi officials have been unable to control the activities of Hashu's criminal gang, "but this is insufficient to compel a finding of willful blindness toward the torture of citizens by third parties." Menjivar v. Gonzales, 416 F.3d 918, 923 (8th Cir. 2005). The Department of State letter reporting that Hashu is a leader of the ruling BNP party does not compel a finding that the Bangladeshi government either instigates or acquiesces in Hashu's private criminal activities.

For these reasons, we deny the petition to review the final order of removal.

## II. The Motion to Reopen

In his second petition for review, Miah contends that the BIA erred when it refused to reopen his removal proceeding so that he may apply for adjustment of status.[1] When a resident alien marries a U.S. citizen, the citizen spouse may file a Form I-130 petition for an "immediate relative" visa that makes the alien eligible to apply for adjustment of status to that of lawful permanent resident. See 8 U.S.C. §§ 1151(b)(2)(A)(I), 1154(a)(1)(A), 1255(a). However, to deter fraudulent marriages,

---

[1]The government argues that the REAL ID Act, 8 U.S.C. § 1252(a)(2)(B), deprived us of jurisdiction to review this claim because "decisions on motions to reopen are discretionary." We disagree. The statute applies to decisions "the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General." (emphasis added). The discretion to grant or deny motions to reopen or reconsider is conferred by the Attorney General's regulations, not by statute. See 8 C.F.R. § 1003.2. Thus, we have continued our long-standing practice of reviewing the denial of motions to reopen for abuse of the BIA's discretion. See, e.g., Zine v. Mukasey, --- F.3d ---, No. 06-3002, 06-4127, slip op. at 9 (8th Cir. Feb. 19, 2008); Solano-Chicas v. Gonzales, 440 F.3d 1050, 1055-56 (8th Cir. 2006).

Congress has barred aliens who marry during removal proceedings from obtaining this adjustment of status unless they can establish "by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and . . . was not entered into for the purpose of procuring the alien's admission as an immigrant." 8 U.S.C. § 1255(e)(3).

Petitions for immediate relative visas are decided by INS (now DHS) local officers. 8 C.F.R. § 204.1. When an alien's spouse obtains an immediate relative visa during the alien's removal proceeding, the visa constitutes primary evidence that the marriage is bona-fide for purposes of applying the § 1255(e)(3) exception. Patel v. Ashcroft, 375 F.3d 693, 696-97 (8th Cir. 2004). However, in Matter of Arthur, 20 I & N Dec. 475, 479 (BIA 1992), the BIA held that a motion to reopen a removal proceeding for the purpose of obtaining a § 1255(e)(3) adjustment of status will not be granted unless there is *prior* INS (DHS) approval of the visa petition. Because motions to reopen must be filed within ninety days, and because delays often attend the visa petition approval process, the BIA concluded in In re Velarde-Pacheco, 23 I & N Dec. 253, 255 (BIA 2002), that its ruling in Arthur was "depriv[ing] a small class of respondents, who are otherwise prima facie eligible for adjustment, of the opportunity to have their adjustment applications reviewed by an Immigration Judge." Accordingly, the BIA held that a properly filed motion to reopen *may* be granted prior to visa petition approval if the motion is timely, not numerically barred, not barred on other procedural grounds, presents clear and convincing evidence of a strong likelihood the marriage is bona fide, and DHS "either does not oppose the motion or bases its opposition solely on Matter of Arthur." Id. at 256. Miah argues that the BIA abused its discretion in refusing to grant his motion to reopen under Velarde.

We reject this contention for two reasons. First, this case is readily distinguishable from Velarde, where the unadjudicated visa petition was filed while the alien's appeal of the removal order was pending before the BIA. Thus, the alien in Velarde was a member of the "small class of [deprived] respondents." Id. at 255. Here, on the other hand, Miah did not marry until after the BIA entered its final order

of removal. Though Miah petitioned for judicial review before the marriage and thus his removal proceeding was still pending for purposes of 8 U.S.C. § 1255(e), he was not deprived of any opportunity by DHS delay in processing his wife's visa petition because the removal proceeding concluded before the Form I-130 petition was filed. Velarde carved a narrow exception to the agency's general rule in Arthur. The BIA did not abuse its discretion in declining to extend the Velarde exception beyond its intended purpose.

Second, DHS opposed Miah's motion to reopen on multiple grounds -- insufficient evidence of the bona fides of Miah's recent marriage, the timing of that marriage, his not-credible testimony before the IJ, and his criminal history. Applying the discretionary factors enumerated in Velarde, the BIA did not abuse its discretion by denying the motion to reopen based upon what it called the "persuasive points" raised by DHS in its brief. See Bhiski v. Ashcroft, 373 F.3d 363, 370-72 (3d Cir. 2004). "Motions for reopening of immigration proceedings are disfavored [because] every delay works to the advantage of the [removable] alien who wishes to remain in the United States." INS v. Doherty, 502 U.S. 314, 322-23 (1992).

We deny the petitions for review.

_____