# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1916
No. 15-1917

_____

Ruben E. Cambara-Cambara; Mario Fernando Cambara-Cambara

*Petitioners*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petitions for Review of Orders of the
Board of Immigration Appeals

_____

Submitted: April 13, 2016
Filed: September 13, 2016

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Ruben and Mario Cambara-Cambara ("the Cambaras") are brothers who left their native country of Guatemala and entered the United States without inspection in February 2001 and August 2004, respectively. They filed separate applications for asylum, withholding of removal to Guatemala, and relief under the Convention

Against Torture ("CAT") in 2009. The immigration judge ("IJ") denied the applications for asylum as untimely and ruled that the brothers did not prove they were eligible for asylum, withholding of removal, or CAT relief. The Board of Immigration Appeals ("BIA") affirmed in separate opinions. We consolidated and now deny their separate petitions for review.

"To be eligible for withholding of removal to a particular country, an alien must show a 'clear probability' that he would suffer persecution on account of a protected ground such as political opinion or membership in a social group." Miah v. Mukasey, 519 F.3d 784, 787 (8th Cir. 2008), citing 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A), and Alemu v. Gonzalez, 403 F.3d 572, 576 (8th Cir. 2005). The Cambaras testified at their March 2012 hearings that they were likely to suffer persecution if they returned to Guatemala due to their membership in two particular social groups: the Cambara family and educated Guatemalan landowners and farmers.[1]

Mario testified that Maras 18 gang members targeted various members of his family in Guatemala for extortionate demands because they were wealthy landowners. In 1995, the gang made death threats in demanding money from his uncle; when his uncle stopped making payments, they tried to burn his house down with his family inside and then shot and stabbed him to death. Three months later, the gang made death threats to another uncle and attacked him when he did not pay their extortion demand, causing physical and psychological trauma. Gang members extorted money from his father for many years by threatening him and his family, and attacked his father with machetes when he stopped paying in December 2008. Ruben testified that, in 2009, gang members threatened a Cambara cousin's family when he could no longer make the demanded payments, then shot and killed his son shortly thereafter.

---

[1]On appeal to the BIA, they abandoned an additional claim that former members of the Guatemalan army are a particular social group.

Mario testified that the family reported these incidents to the police, but the responsible parties have not been captured. Ruben testified that he agreed with Mario's testimony and believed his family was extorted because of their property.

Both Mario and Ruben testified that they were never personally harmed or threatened by Maras 18 gang members. Two of Mario's daughters still live in his hometown with his wife's mother and have not been threatened. One of Ruben's daughters lives in Guatemala, and he sent two American-born daughters to Guatemala for approximately one month to meet his grandmother. The Cambaras have another brother who is an officer in Guatemala's National Civil Police Force.

The IJ found that both asylum applications were untimely because they were filed more than a year after the Cambaras entered the United States, and neither brother established changed or extraordinary circumstances that excused his untimely filing. Alternatively, the IJ concluded that the asylum applications, if timely, were denied because, although their testimony was credible, neither brother proved that (1) he had suffered past persecution, (2) he was a member of a cognizable social group, and (3) he would be persecuted in the future on account of his membership in that social group. The IJ concluded there was evidence the family may have been targeted based on wealth, but perceived wealth alone is not a cognizable social group. The IJ further concluded that, as the Cambaras did not meet the standard for asylum, they did not meet the higher standards for withholding of removal or CAT relief.

The BIA affirmed the IJ's opinions and dismissed the Cambaras' appeals. The BIA rejected their claim that the December 2008 attack on their father constituted changed or extraordinary circumstances because the brothers testified to ongoing threats and harm to family members before they departed Guatemala. The BIA alternatively concluded that the Cambaras were not eligible for asylum because they failed to prove past persecution or a well-founded fear of future persecution on account of their membership in particular social groups. The brothers admitted they

had never been threatened or harmed, and the BIA found there was no "nexus" between their feared future harm and their status as members of the Cambara family. "Although members of the Cambara family have been targeted for harm and mistreatment by the gangs in Guatemala, the [brothers have] not established that [their] family members have been specifically targeted due to their familial relationship, particularly where some members of the family have not received threats or been harmed." The BIA also ruled that "educated landowners and farmers" is not a cognizable social group, and that the Cambaras failed to satisfy the higher burden for withholding of removal, and did not prove they were eligible for CAT relief. We review both the BIA and IJ decisions "[b]ecause the BIA essentially adopted the IJ's opinion while adding some of its own reasoning." Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004).

**A. Asylum**. An asylum applicant must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An untimely application may be considered if the alien "demonstrates to the satisfaction of the Attorney General either . . . changed circumstances which materially affect the applicant's eligibility . . . or extraordinary circumstances" that justify the late application. § 1158(a)(2)(D). The Cambaras concede that they filed their application more than a year after they arrived in the United States, but they contend that the attack on their father in 2008 constituted changed circumstances.

"No court shall have jurisdiction to review any determination of the Attorney General" as to whether changed or extraordinary circumstances warrant consideration of an untimely asylum application. 8 U.S.C. § 1158(a)(3). Thus, we do not have "jurisdiction to review a determination that an application for asylum is untimely, except when the petition seeks review of constitutional claims or questions of law." Bin Jing Chen v. Holder, 776 F.3d 597, 601 (8th Cir. 2015) (quotation omitted); see 8 U.S.C. § 1252(a)(2)(D). The BIA's "factual findings or discretionary judgments . . .

-4-

are insulated from judicial review," including whether the applicant has demonstrated changed or extraordinary circumstances. Purwantono v. Gonzales, 498 F.3d 822, 824 (8th Cir. 2007) (extraordinary circumstances); see Juarez Chilel v. Holder, 779 F.3d 850, 854 (8th Cir. 2015) (changed circumstances).

The Cambaras argue the 2008 attack on their father qualifies as changed circumstances because it "provided further evidence of the type of persecution already suffered." However, this is not a constitutional claim and it does not raise a question of law. Rather, as in Purwantono, "[t]hese contentions amount to a quarrel with the BIA's discretionary factual determination," so we lack jurisdiction to review the BIA's determination that the asylum claims are time-barred. 498 F.3d at 824.

**B. Withholding of Removal**. We have jurisdiction to review the BIA's denial of withholding of removal. The BIA held that the Cambaras have "not demonstrated that [they] suffered past persecution or [have] a well-founded fear of future persecution on account of [their] membership in a particular social group consisting of members of the Cambara family." The BIA further ruled that "educated landowners and farmers" is not a cognizable particular social group. We review the BIA's determinations "under the deferential substantial evidence standard." Miah, 519 F.3d at 787. To warrant judicial relief, the Cambaras must show "that the evidence [they] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Id., quoting INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

The Cambaras argue that their credible evidence of extortionate demands and violent attacks by criminal gangs against members of their family for more than twenty years established that they suffered past persecution and have a well-founded fear of future persecution on account of their membership in a particular social group consisting of "members of the Cambara family, a family of educated landowners and farmers." The BIA assumed that members of the Cambara family constitute a

particular social group, see Bernal-Rendon v. Gonzales, 419 F.3d 877, 881 (8th Cir. 2005), but found that the Cambara brothers failed to establish a nexus between this social group membership and the alleged persecution, that is, proof that "family members have been specifically targeted due to their familial relationship."

On appeal, the Cambaras argue that the "clear pattern of targeting [family members] compels the conclusion that persecution was 'on account of' their membership in the Cambara family." But they provided no proof that the criminal gangs targeted members of the family *because* of family relationships, as opposed to the fact that, as prosperous businessmen, they were obvious targets for extortionate demands. "The [applicant for asylum or withholding of removal] bears the burden of showing that his membership in a particular social group was or will be a central reason for his persecution." Matter of W-G-R-, 26 I & N Dec. 208, 224 (BIA 2012), citing 8 U.S.C. § 1158(b)(1)(B)(i). On this record, substantial evidence supports a finding that the Cambara family "is no different from any other [Guatemalan] family that has experienced gang violence." Constanza v. Holder, 647 F.3d 749, 754 (8th Cir. 2011). The Cambaras' attempt to limit the alleged social group to "members of . . . a family of educated landowners and farmers" does not overcome their failure to prove the required nexus. As we said in Davila-Mejia v. Mukasey, 531 F.3d 624, 629 (8th Cir. 2008), "[t]here is no record evidence that petitioners' mistreatment [here, by Maras 18 gang members] and being robbed and extorted are associated with petitioners being members of a social group identifiable as 'family business owners.'" Finally, that the Cambaras each left daughters in Guatemala, and Ruben sent two others back to visit, undermines the claim that they fear family members will be targeted on account of family status. See Bernal-Rendon, 419 F.3d at 881.

**C. CAT Relief**. An applicant is eligible for CAT relief if he proves that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person

acting in an official capacity." § 1208.18(a)(1). The BIA found that the Maras 18 gang in Guatemala was not acting with the "consent or acquiescence of a public official." Substantial record evidence supports this determination.

The Cambaras argue that the police force in Guatemala is powerless to stop the gangs. "A government does not acquiesce in the torture of its citizens merely because it is aware of the torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007) (quotations and citation omitted). The Cambaras presented strong evidence, including a statement by their brother in the National Civil Police Force, that the police investigated reports of violence against the Cambara family but did not capture any perpetrators, at least in part because the gangs "have better weapons than the National Civil Police and the topographic area they hide in favors them." However, that a police force struggles to control gang activity "is insufficient to compel a finding of willful blindness toward the torture of citizens by third parties," or a finding of government acquiescence in their criminal activities. Menjivar v. Gonzales, 416 F.3d 918, 923 (8th Cir. 2005).

We deny Mario Cambara-Cambara's and Ruben Cambara-Cambara's petitions for judicial review.

_____