**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NOE MEDINA-RODRIGUEZ, AKA
Eloy Medina-Rodriguez, AKA Noe
Rodrigues-Medina,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 19-72681

Agency No.
A041-848-597

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 9, 2020
Pasadena, California

Filed October 30, 2020

Before: MILAN D. SMITH, JR. and JOHN B. OWENS,
Circuit Judges, and KATHLEEN CARDONE,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

## SUMMARY[**]

### Immigration

Denying Noe Medina-Rodriguez's petition for review of a decision of the Board of Immigration Appeals, the panel held that: 1) in determining whether a state conviction is a categorical match for its federal counterpart, the proper point of comparison are the two drug schedules in effect at the time of the conviction; 2) Medina-Rodriguez's 2011 conviction for possession for sale of marijuana, in violation of California Health & Safety Code § 11359, was a drug trafficking aggravated felony because the state and federal schedules defined marijuana the same way at the time of his conviction; and 3) substantial evidence supported the agency's denial of deferral of removal under the Convention Against Torture (CAT).

The panel concluded that it was bound by *Roman-Suaste v. Holder*, 766 F.3d 1035 (9th Cir. 2014), in which the court held that a conviction under § 11359 was a drug trafficking aggravated felony because § 11359 was a categorial match to a federal marijuana offense under 21 U.S.C. § 841(a)(1). The panel also concluded that, even if it were not bound, neither of the two California decisions Medina-Rodriguez relied on supported his argument that *Roman-Suaste* should be considered *en banc*.

Medina-Rodriguez also contended that § 11359 is broader than the generic federal offense because the 2011

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

definition of marijuana pursuant to California law includes types of marijuana not criminalized pursuant to current federal law. The panel noted that precedent demands (and the parties agreed) that the California definition of marijuana at the time of Medina-Rodriguez's conviction was appropriate for the categorical analysis comparison. However, the parties disagreed about whether the federal definition of marijuana to be applied should be that at the time of Medina-Rodriguez's conviction, or at the time of his removal.

Joining the Second, Third, and Eleventh Circuits, the panel held that, when conducting a categorical analysis for removability based upon a state criminal conviction, it is proper to compare drug schedules at the time of the petitioner's underlying criminal offense, not at the time of the petitioner's removal. The panel explained that the Supreme Court has assumed that the time-of-conviction federal drug schedule is the appropriate one for the categorical approach comparison, and that such a rule comports with the purposes of the categorical approach, namely providing the defendant with notice of possible future immigration consequences. Moreover, the panel explained that using the time-of-removal federal drug schedule would undermine a defendant's ability to understand those immigration consequences. Applying the time-of-conviction rule, the panel held that Medina-Rodriguez's conviction qualifies as an aggravated felony that made him removable because the California and federal definitions of marijuana were identical at the time of his conviction.

The panel also held that the BIA had substantial evidence to conclude that Medina-Rodriguez did not meet his burden on his CAT claims. Medina-Rodriguez contended that it is

more likely than not that he will be tortured in Mexico based on his physical disability. The panel noted that the reports Medina-Rodriguez cited primarily concerned individuals with mental health disabilities, and that the absence of evidence that individuals with physical disabilities are not being tortured is not enough to meet the standard for CAT relief. The panel further explained that the articles Medina-Rodriguez cited pertaining to hardships faced by those with physical disabilities in Mexico did not prove it is more likely than not that he will be tortured.

Medina-Rodriguez also asserted that his tattoos make it more likely than not he will be tortured at the hands of a drug cartel with either the direct involvement or acquiescence of the Mexican government. The panel explained that Medina-Rodriguez's claim relied on a series of events, all of which must happen for torture to occur. The panel wrote that, although Medina-Rodriguez's tattoo of Santa Muerte may increase the probability that a gang seeks to recruit him, the evidence did not establish that any step in this hypothetical chain of events is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture.

## COUNSEL

Roxana V. Muro (argued), Los Angeles, California, for Petitioner.

Mona Maria Yousif (argued), Attorney; Brianne Whelan Cohen, Senior Litigation Counsel; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

M. SMITH, Circuit Judge:

Noe Medina-Rodriguez (Medina-Rodriguez) petitions for review of the decision of the Board of Immigration Appeals (BIA). The BIA affirmed the ruling of the immigration judge (IJ) that Medina-Rodriguez was removable for having committed an aggravated felony by violating California Health & Safety Code § 11359. In doing so, the BIA rejected Medina-Rodriguez's argument that, in deciding removability under the categorical approach, the IJ should compare the state definition of marijuana to the federal definition at the time of removal, rather than at the time of conviction. The BIA and IJ determined that Medina-Rodriguez was not eligible for relief pursuant to the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).

We have not yet addressed the issue of whether to compare the relevant narcotics definitions at the time of conviction or at the time of removal. We now join the Second, Third, and Eleventh Circuits in deciding that, when conducting a categorical analysis for removability based upon a state criminal conviction, it is proper to compare drug schedules at the time of the petitioner's underlying criminal offense, not at the time of the petitioner's removal. We additionally affirm the BIA's ruling as to Medina-Rodriguez's CAT claim. Therefore, we deny the petition for review.

**I. Background**

Medina-Rodriguez was born in Mexico, and is a Mexican citizen. He first entered the United States when he

was six months old, and became a lawful permanent resident in 1987.  On April 12, 2011, Medina-Rodriguez was convicted of violating California Health & Safety Code § 11359.  At the time of Medina-Rodriguez's conviction, § 11359 provided that "[e]very person who possesses for sale any marijuana, except as otherwise provided by law, shall be punished by imprisonment in the state prison."  Cal. Health & Safety Code § 11359 (in effect prior to October 1, 2011).  The maximum term of imprisonment for a § 11359 violation was more than one year.  Cal. Penal Code § 18 (in effect prior to October 1, 2011).[1]  A § 11359 violation was a felony under California law.  *See* Cal. Health & Safety Code § 11362 (in effect prior to October 1, 2011); *People v. Shafrir*, 107 Cal. Rptr. 3d 721, 724 (Ct. App. 2010).  The state court ultimately sentenced Medina-Rodriguez to 180 days' imprisonment.

In 2018, the Department of Homeland Security (DHS) served Medina-Rodriguez with a Notice to Appear, charging him with being subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").  DHS charged Medina-Rodriguez with having committed an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).").  DHS alleged

---

[1] The California legislature has since amended § 11359 to provide for punishment "by imprisonment in a county jail for a period of not more than six months or by a fine of not more than five hundred dollars ($500), or by both such fine and imprisonment," if the individual is 18 years of age or older and does not have previous qualifying offenses. Cal. Health & Safety Code § 11359(b) (effective June 27, 2017).

that Medina-Rodriguez's § 11359 conviction was an aggravated felony for the purposes of §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(B).**[2]**

Medina-Rodriguez moved to terminate the proceedings, arguing that a conviction pursuant to § 11359 was not a categorical match to the generic federal narcotics offense, 21 U.S.C. § 841(a), because: (1) § 11359 allegedly criminalized a broader range of conduct than its federal generic counterpart; and (2) the California definition of marijuana differs from the current federal definition. The IJ found Medina-Rodriguez removable as charged.

Medina-Rodriguez next applied for asylum, withholding of removal pursuant to the Immigration and Nationality Act (INA), or relief pursuant to the CAT. In a hearing before the IJ, Medina-Rodriguez described injuries to his back, including a hernia, pain in his sciatic nerve, and a bulging disc. He noted that he has been treated for these injuries while in immigration detention and that he uses a wheelchair since he cannot walk more than fifty feet before experiencing pain. Because of these injuries, Medina-Rodriguez expressed a fear that he could be tortured if returned Mexico and placed in a facility for disabled individuals. Medina-Rodriguez submitted several reports to the IJ, including a Department of State report showing that individuals at mental health facilities in Mexico are abused. He also submitted articles discussing discrimination against disabled individuals in Mexico.

---

**[2]** The Notice to Appear also noted that Medina-Rodriguez had been convicted of possession of a firearm by a felon, in violation of California Penal Code § 12021(a). The Government does not argue that this conviction is a basis for Medina-Rodriguez's removal.

Medina-Rodriguez explained that he has about twenty tattoos on his body, including tattoos of a marijuana leaf and of Santa Muerte, to whom he prays. Medina-Rodriguez accompanied his application with articles noting that members of drug cartels also pray to Santa Muerte. Some articles indicated that Santa Muerte has a significant following among drug cartel members and other criminals. Medina-Rodriguez expressed a fear that he would be kidnapped or recruited into a gang because of his tattoos and ability to speak English. He also told the IJ that the last time he was in Mexico, he was robbed, and that the local police did nothing after he reported the robbery.

The IJ ultimately reaffirmed its earlier decision with respect to removability, deciding that Medina-Rodriguez was not eligible for asylum or withholding of removal. With respect to removability, the IJ adhered to our decision in *Roman-Suaste v. Holder*, 766 F.3d 1035 (9th Cir. 2014), in which we held that § 11359 categorically qualified as an aggravated felony for purposes of removability pursuant to the INA. The IJ generally found Medina-Rodriguez to be a credible witness. Nonetheless, the IJ concluded that Medina-Rodriguez did not qualify for asylum, withholding of removal under the INA, or relief under the CAT.

The BIA affirmed. The BIA also cited *Roman-Suaste* as supporting Medina-Rodriguez's removability and rejected Medina-Rodriguez's argument that the categorical analysis requires a comparison using the federal drug schedule at the time of removal. The BIA also affirmed the IJ concerning Medina-Rodriguez's asylum, withholding, and CAT claims.

Medina-Rodriguez timely petitioned our court for review of the BIA's holdings on removability and CAT deferral of removal.**[3]**

## II. Standard of Review

We have jurisdiction over Medina-Rodriguez's petition for review pursuant to 8 U.S.C. § 1252(a). "We review de novo the BIA's determinations on questions of law and mixed questions of law and fact." *Conde Quevedo v. Barr*, 947 F.3d 1238, 1241 (9th Cir. 2020). This *de novo* review extends to the question of "whether a state statutory crime qualifies as an aggravated felony." *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1118 (9th Cir. 2020). "We review for substantial evidence the BIA's factual findings." *Conde Quevedo*, 947 F.3d at 1241. The Supreme Court recently confirmed that the BIA's factual findings on CAT claims are also subject to the substantial evidence standard. *Nasrallah v. Barr*, 590 U.S. __, 140 S. Ct. 1683, 1692 (2020). "Substantial evidence review means that we may only reverse the agency's determination where the evidence compels a contrary conclusion from that adopted by the BIA." *Parada v. Sessions*, 902 F.3d 901, 908–09 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also Nasrallah*, 140 S. Ct. at 1692 ("The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B))).

---

**[3]** Medina-Rodriguez does not renew his claims regarding jurisdiction, asylum, and withholding of removal under the INA.

### III. Categorical Approach

Courts employ the categorical approach to determine whether a state criminal conviction is an aggravated felony for the purposes of the INA, *see Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013), or Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), *see Descamps v. United States*, 570 U.S. 254, 257 (2013).

When applying the categorical approach, a court "ask[s] whether the [state] statute of conviction is a categorical match to the generic [federal] predicate offense; that is, if the statute of conviction criminalizes only as much (or less) conduct than the generic offense." *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014). "[T]he offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Moncrieffe*, 569 U.S. at 190. "[O]nly if a conviction of the state offense necessarily involved . . . facts equating to [the] generic [federal offense]" is there a categorical match. *Id.* (internal quotation marks and citation omitted). "Whether the noncitizen's actual conduct involved such facts is quite irrelevant." *Id.* (internal quotation marks and citation omitted). A court "must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized." *Id.* at 190–91 (internal quotation marks and citation omitted). If an individual proves that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic [federal] definition of a crime," then the state statute is not a categorical match. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). "To show that realistic probability, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he

argues." *Id.* If the statutes are a categorical match, then the inquiry ends. The state criminal conviction is then considered an aggravated felony for the purposes of the INA. *See Roman-Suaste*, 766 F.3d at 1039.

Medina-Rodriguez argues that § 11359 is not a categorical match to the generic federal offense for two reasons. First, Medina-Rodriguez believes that § 11359 criminalizes conduct beyond the scope of the generic federal offense. Second, he contends that, because the California definition of marijuana does not match the current federal definition, § 11359 is not a categorical match.

## A. The Scope of Section 11359

In *Roman-Suaste*, we determined that § 11359 was a categorical match for the federal marijuana offense. 766 F.3d at 1039. We noted that the INA defines "'aggravated felony' to include 'illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).'" *Id.* at 1038 (quoting 8 U.S.C. § 1101(a)(43)(B)). "In turn, the phrase 'drug trafficking crime' is defined as, among other things, 'any felony punishable under the Controlled Substances Act.'" *Id.* (quoting 18 U.S.C. § 924(c)(2)). "Finally, a 'felony' is an offense for which the maximum term of imprisonment is 'more than one year.'" *Id.* (quoting 18 U.S.C. § 3559(a)(5)).

We then compared § 11359 to the generic federal offense, 21 U.S.C. § 841(a)(1). Section 841(a)(1) makes it a felony "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance[.]" *Id.* One exception to § 841(a)(1) is that "any person who violates [§ 841(a)(1)] by distributing a

small amount of marihuana for no remuneration" is punishable with a misdemeanor only. *Id.* § 841(b)(4).

Applying the Supreme Court's decision in *Moncrieffe*, the *Roman-Suaste* court noted that, under the federal statute, "possession with intent to distribute is always punishable as a felony where *remuneration* is involved." *Roman-Suaste*, 766 F.3d at 1039 (emphasis in original). It then wrote that "[a] 'sale,' as commonly understood, contemplates a transfer in exchange for money or some other form of remuneration, and California case law confirms this understanding." *Id.* (citing *People v. Lazenby*, 8 Cal. Rptr. 2d 541, 543 (Ct. App. 1992)). Thus, we held that because § 11359 always involves remuneration, an individual could not be convicted for conduct described in the misdemeanor provision of 21 U.S.C. § 841(b)(4). *Roman-Suaste*, 766 F.3d at 1039.

We are bound by our decision in *Roman-Suaste*.[4] *Silva v. Barr*, 965 F.3d 724, 735 (9th Cir. 2020). Applying that

---

[4] The version of § 11359 at issue in this case differs slightly from the version at issue in *Roman-Suaste*. Section 11359, as discussed in *Roman-Suaste*, provided that offenders "shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code." Cal. Health & Safety Code § 11359 (in effect from October 1, 2011 to November 8, 2016). The statute under which Medina-Rodriguez was convicted provided that offenders "shall be punished by imprisonment in the state prison." *Id.* (in effect prior to October 1, 2011).

No party argues that the California legislature's decision to alter the language regarding punishment has any effect on the categorical approach. In both instances, the maximum possible penalty was at least one year's imprisonment. *See Roman-Suaste*, 766 F.3d at 1038 (citing Cal. Penal Code § 1170(h)); Cal. Penal Code § 18 (in effect prior to October 1, 2011). And an "offense for which the maximum term of imprisonment is 'more than one year,'" is a felony for the purposes of the INA. *Roman-Suaste*, 766 F.3d at 1038 (quoting 18 U.S.C. § 3559(a)(5)).

decision here, we conclude that Medina-Rodriguez's conviction under § 11359 is a categorical match and subjects Medina-Rodriguez to removal. *Cf. Fajardo v. Barr*, 808 F. App'x 413, 414 (9th Cir. 2020) (applying *Roman-Suaste*).

Medina-Rodriguez recognizes that we are required to follow *Roman-Suaste*, but nonetheless "submits that the holding in *Roman-Suaste* must be reconsidered *en banc*." He argues that California state court decisions interpreting § 11359 show that a person could have been convicted for possession of less than thirty grams of marijuana without remuneration. If a person could have been convicted pursuant to § 11359 for possession of a small amount of marijuana without remuneration, such conduct would fall under the federal carve-out to the general felony provision, *see* 21 U.S.C. § 841(b)(4), and might render Medina-Rodriguez non-removable, *see Gonzales*, 549 U.S. at 193.

Specifically, Medina-Rodriguez points to the decisions of the California Court of Appeal in *People v. Harris*, 99 Cal. Rptr. 2d 618 (Ct. App. 2000), and *People v. Rusco*, 60 Cal. Rptr. 2d 537 (Ct. App. 1997), *superseded by People v. Rusco*, 975 P.2d 30 (Cal. 1999). Even if we could disregard the decision in *Roman-Suaste* (which we cannot), neither of these two California decisions supports Medina-Rodriguez's argument. In neither case did the California Court of Appeal hold that an individual could be convicted pursuant to § 11359 without selling (or intending to sell) marijuana. In *Harris*, the Court of Appeal explicitly stated that circumstantial evidence could support the notion that "the narcotics are held for purposes of *sale* . . . . Thereafter, it is for the jury to credit such opinion or reject it." *Harris*, 99 Cal. Rptr. 2d at 620 (internal quotation marks and citation omitted) (emphasis added). Thus, § 11359 is not analogous to the statute at issue in *Moncrieffe*, where the Supreme

Court ruled that a statute criminalizing only "intent to *distribute* marijuana" without a remuneration requirement, was not a categorical match. *Moncrieffe*, 569 U.S. at 194 (emphasis added). Section 11359 actually matches the Supreme Court's description of a statute that would be a categorical match—one that involved "'sell[ing]' marijuana," which "would seem to establish remuneration." *Id. Harris*, in conformity with the text of § 11359, confirms that California statute requires the sale of (or intent to sell) marijuana. Thus, even if we were not bound by *Roman-Suaste*, Medina-Rodriguez's arguments would be unavailing.

## B. Definition of Marijuana

Medina-Rodriguez next contends that § 11359 is broader than the generic federal offense because the 2011 definition of marijuana pursuant to California law includes types of marijuana not criminalized pursuant to current federal law. A mismatch between state and federal drug schedules triggers a finding of overbreadth of the state statute using the categorical approach. *See Mellouli v. Lynch*, 575 U.S. 798, 135 S. Ct. 1980, 1991 (2015) ("[T]o trigger removal under [the INA], the Government must connect an element of the alien's conviction to a drug 'defined in'" the federal drug schedule.). This is because, if the state drug schedule is broader than the federal drug schedule, the state criminal conviction may have "required no proof by the prosecutor that" the defendant's state felony was based on a substance also banned by federal law. *Id.* at 1988. *Accord United States v. Rodriguez-Gamboa*, 946 F.3d 548, 551–53 (9th Cir. 2019) (holding that, if California's definition of methamphetamine is broader the federal definition, the state drug conviction cannot form the basis for a conviction of illegal reentry); *Lorenzo v. Whitaker*, 752 F. App'x 482,

485–86 (9th Cir. 2019) (applying the mismatch between methamphetamine definitions in the removal context).

Precedent demands (and the parties agree) that the California definition of marijuana at time of Medina-Rodriguez's conviction is appropriate for the categorical analysis comparison. *See Dominguez v. Barr*, __ F.3d __, 2020 WL 5603930, at *5 n.3 (9th Cir. 2020), *as amended* Sept. 18, 2020 ("[W]hen applying the categorical approach, we consider the law that the petitioner was convicted of violating as it applied at the time of conviction." (citing *McNeill v. United States*, 563 U.S. 816, 820 (2011))). The parties disagree about whether the federal definition of marijuana to be applied in the categorical analysis should be that at the time of Medina-Rodriguez's conviction, or at the time of his removal.

In *Roman-Suaste*, we did not decide whether it is proper to compare the state definition of a drug to the federal definition at the time of the petitioner's conviction, or at the time of his removal.[5] Past decisions from our court may have assumed that the time-of-conviction drug schedule should be the point of comparison. *See, e.g.*, *Fahham v. Barr*, 786 F. App'x 698, 700 n.2 (9th Cir. 2019) ("[T]he parties agreed that the relevant South Dakota drug schedules included . . . substances that were not included in the

---

[5] We refer to the two possibilities for the federal drug schedule comparison as the "time-of-conviction" or the "time-of-removal." The parties have framed the question in that manner. However, the Fifth Circuit has ruled that the state and federal drug schedules at the time of *arrest*, not conviction, should govern. *Lopez Ventura v. Sessions*, 907 F.3d 306, 309 (5th Cir. 2018); *see also United States v. Cantu*, 964 F.3d 924, 936–37 (10th Cir. 2020) (Hartz, J., concurring). No party raises the time-of-arrest vs. time-of-conviction issue in this case, and we do not decide it here.

*corresponding* federal drug schedules.") (emphasis added)). However, "unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985).

In *Doe v. Sessions*, 886 F.3d 203 (2d Cir. 2018), the Second Circuit confronted this issue. Doe was convicted in 2014 of the federal crimes of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C). *Doe*, 886 F.3d at 206. DHS then charged Doe "as removable . . . for having been convicted of," among other crimes, "a drug trafficking aggravated felony." *Id.* (citations omitted). Doe argued that he was not removable "because the [drug s]chedules were broader on the date of his conviction than at the time of his removal proceedings," as a specific type of heroin was removed from the federal drug schedule after Doe's criminal conviction. *Id.* The Second Circuit disagreed with Doe, and instead held that the time-of-conviction federal drug schedule was appropriate for a categorical analysis comparison. *Id.* at 208.

First, the court noted that the Supreme Court had assumed that the federal drug schedule at the time of conviction determined removability. *Id.* at 208. In *Mellouli*, the Supreme Court wrote: "*At the time of Mellouli's conviction*, Kansas' schedules of controlled substances included at least nine substances" not found in the federal drug schedule. *Mellouli*, 135 S. Ct. at 1988 (emphasis added). The BIA similarly has assumed that an IJ should compare the state and federal drug schedules at the time of an individual's conviction. *See Matter of Ferreira*, 26 I. & N. Dec. 415, 418 (BIA 2014).

The Second Circuit determined that the plain text of the INA provides little guidance. Doe "argue[d] that the use of present tense verbs in particular sections of the INA indicates that [the court] should refer to the version of the [federal s]chedules in force when removal proceedings are initiated." *Doe*, 886 F.3d at 209. Those provisions include 18 U.S.C. § 924(c)(2) ("[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act . . . ."), and 8 U.S.C. § 1101(a)(43)(B) ("The term 'aggravated felony' means . . . illicit trafficking in a controlled substance (as defined in section 802 of Title 21) . . . ."). The Second Circuit did not find this argument persuasive, as those provisions "merely specify the crimes for which an alien may be removed" and "offer no insight into whether the INA mandates a 'time-of-conviction' or a 'time-of-decision' rule." *Doe*, 886 F.3d at 209. The Second Circuit suggested that other provisions of the INA actually pointed to the opposite conclusion, as the INA focuses on an individual's "conviction" as the basis for removability. *See id.* at 209 n.5 (citing 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i)); *cf. Carachuri-Rosendo v. Holder*, 560 U.S. 563, 576 (2010) ("The text thus indicates that we are to look to the conviction itself as our starting place, not to what might have or could have been charged.").

Finally, the Second Circuit noted that using the time-of-conviction federal drug schedule better accords with the reasons for using the categorical approach. The categorical approach "works to promote efficiency, fairness, and predictability in the administration of immigration law." *Mellouli*, 135 S. Ct. at 1987. A time-of-conviction rule allows an individual "to anticipate the immigration consequences of a guilty plea or conviction at trial." *Doe*, 886 F.3d at 209. A time-of-conviction rule also enables a non-citizen defendant to "enter safe harbor guilty pleas [that]

do not expose the [alien defendant] to the risk of immigration sanctions." *Mellouli*, 135 S. Ct. at 1987 (internal quotation marks and citation omitted). Moreover, a time-of-conviction rule adheres to the Supreme Court's general prescription that a non-citizen defendant does not receive effective assistance of counsel unless counsel advises that defendant of the possible immigration consequences of a plea to a criminal charge. *See Padilla v. Kentucky*, 559 U.S. 356, 366–69 (2010). A time-of-removal rule would make the dispensing of such advice practically impossible. A defendant (and his or her lawyer) cannot know whether or how the federal government will change the federal drug schedule at some point in the future.

Other circuits have since adopted the Second Circuit's position in *Doe*. The Third Circuit applied *Doe* to a petitioner in the same position as Medina-Rodriguez, where the petitioner had been convicted of a state crime. *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018). The Eleventh Circuit has done the same. *Gordon v. Att'y Gen.*, 962 F.3d 1344, 1351 n.4 (11th Cir. 2020).

The United States District Court for the Middle District of Pennsylvania took the opposite approach. *United States v. Miller*, __ F. Supp. 3d __, 2020 WL 4812711 (M.D. Pa. 2020). According to that court, "[w]hen applying the categorical approach, . . . courts look to the federal offense as it presently exists. This makes intuitive sense, because the categorical approach is predominantly used to determine present-day implications of prior convictions." *Id.* at *7. However, the court cited no case law to support its contention, and instead focused primarily on the text of the Sentencing Guidelines. *See id.* Perhaps most importantly, *Miller* involved application of the categorical approach in an ACCA case, not an immigration case. In the ACCA context,

courts are split as to whether a time-of-conviction or time-of-sentencing rule should apply. *Compare id. with United States v. Gotti*, 2020 WL 5597487, at *4 (D. Conn. Sept. 18, 2020) (citing *Doe*); *see also United States v. Swinton*, __ F. Supp. 3d __, 2020 WL 6107054, at *6–8 (W.D.N.Y. 2020) (discussing the two approaches).

In the immigration context,[6] we find the approach of the Second, Third, and Eleventh Circuits to be persuasive. As noted above, the Supreme Court has assumed that the time-of-conviction federal drug schedule is the appropriate one for the categorical approach comparison. Such a rule comports with the purposes of the categorical approach, namely providing the defendant with notice of possible future immigration consequences. Using the time-of-removal federal drug schedule would undermine a defendant's ability to understand those immigration consequences.

Applying the time-of-conviction rule here, we hold that Medina-Rodriguez's conviction qualifies as an aggravated felony pursuant to the INA. In 2011, at the time of Medina-Rodriguez's guilty plea, California and federal law defined marijuana in the same way. *See* Cal. Health & Safety Code § 11018 (in effect prior to November 9, 2016); 21 U.S.C. § 802(16) (in effect from April 15, 2009 to December 17, 2014). The federal law's current exemption for hemp, *see id.* § 802(16)(B) (in effect since December 21, 2018), cannot relieve Medina-Rodriguez under the approach we endorse today. Therefore, we affirm the BIA's removability holding.

---

[6] We do not decide whether the same rule applies in the ACCA context, as that issue is not before the court.

## IV. Convention Against Torture

Medina-Rodriguez argues that, even if he is removable, he qualifies for deferral of removal under the CAT. "The burden of proof is on the applicant for withholding [or deferral] of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" but "does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a)(1)–(2). Such torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). As noted above, we review the BIA's factual findings on a CAT claim under the substantial evidence standard. *Nasrallah*, 140 S. Ct. at 1692.

Medina-Rodriguez contends that it is more likely than not that he will be tortured for two reasons if removed to Mexico: (1) his disability, and (2) his tattoos.

On the disability claim, the IJ and BIA agreed that Medina-Rodriguez could face discrimination because of his physical disability. But the reports Medina-Rodriguez cites primarily concerned individuals with mental health disabilities. In particular, the State Department report states that Mexican "law prohibits discrimination against persons with physical, sensory, intellectual, and mental disabilities." But in the next paragraph, the report discusses how "[a]buses in *mental health* institutions and care facilities . . . were a problem. Abuses of persons with disabilities included the use of physical and chemical restraints, physical and sexual abuse," and other forms of abuse. Thus, it appears that the

State Department, in discussing abuse of individuals with disabilities, referred to those individuals with mental health disabilities, not those with physical disabilities.

Medina-Rodriguez seems to recognize this fact but tells us that the State Department "never limited its analysis of harm to Mexico's disabled population to only those struggling with their mental health." However, the absence of evidence that individuals with physical disabilities are *not* being tortured is not enough to meet the standard for CAT relief. *Cf. Miah v. Mukasey*, 519 F.3d 784, 788 (8th Cir. 2008) (holding that "the absence of evidence that" an alleged persecutor engaged in "violent criminal conduct . . . at the instigation of or with the consent or acquiescence of a public official," was enough to deny CAT relief). The opposite holding would upend DHS's regulation, which states that the petitioner has the "burden of proof . . . to establish that it is more likely than not that he or she will be tortured." 8 C.F.R. § 1208.16(c)(2). The articles Medina-Rodriguez cites pertaining to the hardships faced by those with physical disabilities in Mexico "may have demonstrated that he is more likely than not to experience discrimination and persecution," but they do not prove it is more likely than not that he will be tortured." *Nyirenda v. Lynch*, 655 F. App'x 593, 595 (9th Cir. 2016). The BIA had substantial evidence to conclude that Medina-Rodriguez could not meet his burden on his CAT claim with regard to his physical disability.

Medina-Rodriguez also asserts that his tattoos make it more likely than not he will be tortured at the hands of a drug cartel with either the direct involvement or acquiescence of the Mexican government. He infers that he "is much more likely than the general population to be targeted for torture." However, as the IJ noted, Medina-Rodriguez's claim relies

on a series of events, all of which must happen for torture to occur. First, a gang would have to target Medina-Rodriguez for recruitment because of his tattoos. While some individuals with prior criminal convictions have Santa Muerte tattoos, Medina-Rodriguez has not shown "that it is more likely than not" he will be recruited into such a gang. 8 C.F.R. § 1208.16(c)(2). Medina-Rodriguez's claim then requires a drug cartel or gang to torture him. Then Medina-Rodriguez must show that the Mexican government will participate in or acquiesce to that torture. *See id.* § 1208.18(a)(1). Although the tattoo of Santa Muerte may increase the probability that a gang seeks to recruit Medina-Rodriguez, "[t]he evidence does not establish that any step in this hypothetical chain of events is more likely than not to happen, let alone that the entire chain will come together to result in the probability of torture." *In re J-F-F-*, 23 I. & N. Dec. 912, 917–18 (A.G. 2006). The BIA had substantial evidence to deny Medina-Rodriguez's CAT claim on this basis as well.

## V. Conclusion

Medina-Rodriguez's violation of California Health & Safety Code § 11359 constitutes an aggravated felony for purposes of the INA, as decided by our court in *Roman-Suaste*. As an issue of first impression for our court, we hold that, in determining whether a state criminal conviction is a categorical match for its federal counterpart, the proper point of comparison are the two drug schedules in effect at the time of the petitioner's conviction, not at the time of his removal. Since the California and federal definitions of marijuana were identical at the time of Medina-Rodriguez's guilty plea, his conviction was a categorical match with the generic federal offense. Thus, he is removable. Finally, we affirm

the BIA's decision to deny Medina-Rodriguez's claim for deferral of removal under the CAT.

Medina-Rodriguez's petition for review is denied.